IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WAYNE JORDAN,

　　*Plaintiff*,

v.

DERECK E. DAVIS, STATE
TREASURER, *et al.*,

　　*Defendants*.

Civil Action No. ELH-22-1541

## MEMORANDUM OPINION

In this civil rights case, plaintiff Wayne Jordan, a Maryland prisoner, filed suit, through counsel, pursuant to 42 U.S.C. § 1983. *See* ECF 2 (the "Original Complaint").[1]  In a First Amended Complaint (ECF 12, the "Amended Complaint"), plaintiff alleges that in January 2019 he was brutally assaulted by another inmate while he was in the shower at a Maryland correctional facility.

Jordan named eleven defendants.  They are Dereck E. Davis, State Treasurer; the Maryland Department of Public Safety and Correctional Services ("DPSCS"); Robert L. Green, "Secretary of DPSCS"; O. Wayne Hill, "Commissioner of Corrections"; J. Thomas Wolfe, "Acting Warden of Jessup Correctional Institution" ("JCI")[2]; Walter West, Warden of Eastern Correctional Facility East ("ECI-E"); Carlos Bivens, Warden of Roxbury Correctional Institution ("RCI"); Ronald Shane Weber, Warden of Western Correctional Institution ("WCI"); William Bohrer, Warden of

---

[1] Suit was initially filed in the Circuit Court for Baltimore City.  ECF 1-3.  The case was timely removed to federal court on June 22, 2022, pursuant to 28 U.S.C. §§ 1331, 1343, and 1441(a).  ECF 1 ("Notice of Removal"), ¶ 5.

[2] Green is no longer the Secretary of DPSCS. Hill is now the Deputy Secretary of Operations of DPSCS.  And, Wolfe is no longer the Acting Warden of JCI.  *Department of Public Safety & Correctional Services*, Md. Manual On-Line, https://msa.maryland.gov/msa/mdmanual/22dpscs/html/dpscs.html (last accessed March 6, 2023).

Maryland Correctional Training Center ("MCTC"); Correctional Officer II Tyrone Bowman; Sergeant Barkley[3]; and "several unknown correctional officers." ECF 12. However, defendants Wolfe, West, Bivens, Weber, Bohrer, Bowman, and Barkley have not been served. *See* Docket; *see also* ECF 13-2 at 15 n.9; Fed. R. Civ. P. 4(m) (allowing 90 days for service, unless good cause is shown).

Plaintiff asserts seven causes of action against all defendants, stemming from the assault of plaintiff in January 2019, committed by another inmate, while plaintiff was in the shower at a Maryland Correctional facility (the "Incident"). ECF 12, ¶¶ 24–33. In particular, plaintiff seeks relief under 42 U.S.C. § 1983 for two alleged violations of the federal Constitution: "Subjecting Plaintiff to Serious Harm and a Substantial Risk of Serious Harm in Violation of the Eighth Amendment" (Count 1), and "Constitutional Denial of Due Process in Failing to Train and or Supervise" (Count 2). *Id.* ¶¶ 34–48. Additionally, the suit contains two claims alleging violations of the Maryland Declaration of Rights: "Violations of Declaration of Rights of the Constitution of the State of Maryland, including but not limited to Articles 2, 19, 24, and 26" (Count 3); and "Violations of Articles 16 and 25 of the Maryland Declaration of Rights" (Count 4). *Id.* ¶¶ 49–63.[4] Plaintiff also asserts three State tort claims: "Vicarious Liability" of the defendants for the

---

[3] The suit does not specify Barkley's first name.

[4] Although the Amended Complaint asserts rights under the Maryland Declaration of Rights, it does not define these rights. Article 2 states that "[t]he Constitution of the United States, and the Laws made, or which shall be made, in pursuance thereof . . . shall be the Supreme Law of the State." Article 16 states that "no Law to inflict cruel and unusual pains and penalties ought to be made." Article 19 provides that "every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the Land . . . freely without sale, fully without any denial, and speedily without delay." Article 24 states that "no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges . . . but by the judgment of his peers, or by the Law of the land." Article 25 states that "excessive bail ought not to be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted." And, Article 26 states that "all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive."

actions of correctional officers (Count 5); "Negligence" (Count 6); and "Gross Negligence" (Count 7).  *Id.* ¶¶ 64–81.

Davis, DPSCS, Green, and Hill – the only defendants who were served – have moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6).  ECF 13.  The motion is supported by a memorandum.  ECF 13-2 (collectively, the "Motion").  Plaintiff opposes the Motion (ECF 19), supported by a memorandum.  ECF 19-1 (collectively, the "Opposition").  And, defendants replied.  ECF 24 (the "Reply").

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Motion, with leave to amend.

## I. Factual and Procedural Background[5]

Plaintiff alleges that on January 10, 2019, while he was in the shower for Unit 6-B at ECI-E, "he was struck in the eye by an unknown, unprovoked inmate with a weapon or foreign object," which caused him to bleed and "left him disoriented in a white-out or immobilized state for some time."  ECF 12, ¶ 25.  Plaintiff "could not immediately discern what had happened," but "found himself with blood on his floor . . . ."

According to Jordan, "[t]here was no staff member or officer in the area or on post when this happened," and "no staff member or officer responded to [him] to address his assailant and or

_____

Article 24 is considered *in pari materia* with the Fourteenth Amendment.  Articles 16 and 25 are construed *in pari materia* with the Eighth Amendment.  And, Article 26 is considered *in pari materia* with the Fourth Amendment.  *See* ECF 13-2 at 22-23 (citing cases).

[5] As discussed, *infra*, at this juncture I must assume the truth of the facts alleged in the suit. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).

Throughout the Memorandum Opinion, the Court cites to the electronic pagination. However, the electronic pagination does not always correspond to the page number imprinted on the particular submission.

render him aid during or after the incident occurred." *Id*. ¶ 26.   However, he "subsequently overheard the staff offers [sic] stating that the camera observed someone hit him with a weapon." *Id*. ¶ 25.

Plaintiff asked that the video footage of the Incident be preserved. *Id*. ¶ 25.[6]   According to plaintiff, an investigation subsequently revealed that plaintiff was attacked by "Al Bell, inmate number 41-937." *Id*. ¶ 29.[7]   Plaintiff states that "Bell was subsequently convicted of Second Degree Assault for his role in this incident, and sentenced to three years incarceration." *Id*. ¶ 30.

Jordan alleges that the shower facilities at ECI-E are "in the recreation hall," which is "different from the shower facility at every other correctional institution in the Maryland Department of Corrections." *Id*. ¶ 28.   He also asserts that, "[d]ue to its placement in the recreation hall, it is not conducive to being monitored," and "correctional officers are often unaware when inmates are involved in fights or experience injuries."  ECF 12, ¶ 28.

Moreover, plaintiff alleges that inmates have been "assaulted and injured while showering in the area previously," and therefore staff members and officials were "on notice that this area was dangerous, . . . and that staff and officers were needed to monitor the area."  *Id*.  Yet, according to plaintiff, although officials at ECI-E and DPSCS "are aware of these problems" they "still allow the dangerous environment to persist."  *Id*.

As a result of the attack, plaintiff suffered "multiple facial fractures" and lost the sight in his right eye and then "lost the eye." *Id*. ¶ 31.   He also complains that he has not received access

---

[6] Plaintiff does not specify who he asked or when.  See ECF 12, ¶ 25.

[7] The Amended Complaint states: "As per the Application for Statement of Charges for Mr. Bell, 'A review of the video camera footage clearly shows Inmate Bell looking around and then suddenly striking Inmate Jordan in his face with his right first.'  *See* Exhibit 1, **Application for Statement of Charges, Al Bell**."  ECF 12, ¶ 29 (emphasis in original).   However, no exhibits were submitted.  *See* Docket.

to proper "medical attention, appointments, specialists, drops, eye patches and other medical devices" and has not received "specialized care and treatment for his lost eye and damage to his related facial structures and remaining eye," which has aggravated his injuries, worsened his pain, and affected the sight in his remaining eye. *Id.* Plaintiff states that although DPSCS officials "are aware of this incident . . . , as well as the fact that his condition continues to worsen as a result of the lack of proper treatment and medication attention," they have "failed to properly and appropriately tend to and treat his injuries and resulting worsening medical and vison [sic] problems that stem from the incident." *Id.*

Jordan filed a "Maryland Division of Correction Request for Administrative Remedy" on January 21, 2019, which was dismissed the following day "for procedural reasons." ECF 12, ¶ 19. On February 16, 2019, plaintiff filed a "Maryland Division of Correction Headquarters Appeal of Administrative Remedy Response," which was also "dismissed for procedural reasons." *Id.* ¶ 20. This suit followed. ECF 2.

Additional facts are included, *infra.*

## II. Standard of Review

Defendants move to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6). ECF 13-2. A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Nadendla v. WakeMed*, 24 F.4th 299, 304–05 (4th Cir. 2022); *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A

Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Nadendla*, 24 F.4th at 304–05; *Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n

unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cnty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012). But, "[m]ere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion. *Morrow v. Navy Federal Credit Union*, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022).

In connection with a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards*, 178 F.3d at 243). But, "in the relatively rare

circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst*, 4 F.3d at 250).

Notably, a plaintiff may not cure a defect in a complaint or otherwise amend a complaint by way of his opposition briefing. *See, e.g.*, *So. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy."); *Glenn v. Wells Fargo Bank, N.A.*, DKC-15-3058, 2016 WL 3570274 at *3 (D. Md. July 1, 2016) (declining to consider declaration attached to brief opposing motion to dismiss because, among other things, it included allegations not alleged in the suit; *Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n. 4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998); *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) ("'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss'") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)), *aff'd*, 2 F.3d 56 (4th Cir. 1993).

### III. Discussion

### A. Federal Law Claims (Counts 1 and 2)

### 1. Section 1983 Generally

Plaintiff's federal claims are lodged pursuant to 42 U.S.C. § 1983.  Under § 1983, a plaintiff may file suit against any person who, acting under the color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 575 U.S. 983 (2015).  However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017).  In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief."  *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law."  *West v. Atkins*, 487 U.S. 42, 48, (1988); *see Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019); *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159–60 (4th Cir. 1997).  "The first step in any such claim is to pinpoint the specific right that has been infringed."  *Safar*, 859 F.3d at 245.

The phrase "under color of state law" is an element that "'is synonymous with the more familiar state-action requirement' for Fourteenth Amendment claims, 'and the analysis for each is identical.'" *Davison*, 912 F.3d at 679 (quoting *Philips*, 572 F.3d at 180); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982). A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk Cnty. v. Dodson*, 454 U.S. 312, 317–18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326, (1941)); *see also Philips*, 572 F.3d at 181 (citations and internal quotation marks omitted) ("[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient.").

### 2. Official Capacity Claims; the Eleventh Amendment

Plaintiff has sued Green and Hill in their individual and official capacities. ECF 12, ¶¶ 5, 6. Defendants contend that "'neither a State nor its officials acting in their official capacities are "persons" who are subject to suit for money damages under Section 1983.'" ECF 13-2 at 11 n.7 (citations omitted). And, they argue: "Plaintiff's official capacity claims are also barred by the Eleventh Amendment to the United States Constitution." ECF 13-2 at 11 n.7 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984)).

The Eleventh Amendment to the United States Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court."). As discussed, *infra*, Eleventh Amendment immunity

may also extend to "state agents and state instrumentalities." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997).

The Supreme Court has explained: "Although by its terms the [Eleventh] Amendment applies only to suits against a State by citizens of another State, our cases have extended the Amendment's applicability to suit for damages by citizens against their own States." *Garrett*, 531 U.S. at 363 (collecting cases); *see Allen v. Cooper*, ___ U.S. ___, 140 S. Ct. 994, 1000 (2020); *see*, *e.g.*, *Va. Office for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011); *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002); *Kimmel v. Fla. Bd. of Regents*, 528 U.S. 62, 72–73 (2000); *Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019), *cert. denied*, __ U.S.__, 140 S. Ct. 903 (2020); *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248 (4th Cir. 2012). In *Pense v. Md. Dep't of Pub. Safety & Corr. Servs.*, 926 F.3d 97, 100 (4th Cir. 2019), the Court said: "The Supreme Court 'has drawn on principles of sovereign immunity to construe the Amendment to establish that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.'" (quoting *Port Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)).

However, the Eleventh Amendment did not create State sovereign immunity. Indeed, "the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." *Alden v. Maine*, 527 U.S. 706, 713 (1999). Rather, the Eleventh Amendment "preserve[s] the States' traditional immunity from private suits." *Id.* at 724; *see also Sossamon v. Texas*, 563 U.S. 277, 284 (2011).

The preeminent purpose of State sovereign immunity is to "accord states the dignity that is consistent with their status as sovereign entities." *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002). The Fourth Circuit has reiterated that the defense of sovereign immunity

11

is a jurisdictional bar, explaining that "'sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction.'" *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (citation omitted), *cert. denied*, ___ U.S. ___, 139 S. Ct. 417 (2018); *see also Cunningham v. Lester*, 990 F.3d 361, 365 (4th Cir. 2021) (recognizing sovereign immunity as a jurisdictional limitation and describing it as "a weighty principle, foundational to our constitutional system"). Thus, in the absence of waiver or a valid congressional abrogation of sovereign immunity, the states enjoy immunity from suits for damages brought in federal court by their own citizens. *See Hans v. Louisiana*, 134 U.S. 1, 3 (1890).

In construing the scope of the Eleventh Amendment, the Supreme Court "has drawn on principles of sovereign immunity." *Feeney*, 495 U.S. at 304. "In proposing the Amendment, 'Congress acted not to change but to restore the original constitutional design.'" *Franchise Tax Bd. of Cal. v. Hyatt*, __ U.S.__, 139 S. Ct. 1485, 1496 (2019) (quoting *Alden*, 527 U.S. at 722). But, the Fourth Circuit has recognized that State sovereign immunity is "'broader'" than Eleventh Amendment immunity. *Williams v. Morgan State Univ.*, 2022 WL 7375983, at *1 (4th Cir. Oct. 19, 2022) ("*Williams II*") (quoting *Williams v. Morgan State Univ.*, 850 F. App'x 172, 174 (4th Cir. 2021) (per curiam) ("*Williams I*")).

In *Williams I*, 850 F. App'x at 174, the Fourth Circuit said: "While courts often discuss both doctrines under the banner of Eleventh Amendment immunity, 'the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment.'" The Court also said that, "'as the Constitution's structure, its history, and the authoritative interpretations by [the Supreme] Court make clear, the States' immunity from suit is a fundamental

aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today.'" *Id.* (alteration in *Williams I*) (quoting *Alden*, 527 U.S. at 713).

Sovereign immunity is "a weighty principle, foundational to our constitutional system." *Cunningham*, 990 F.3d at 365. But, as a review of relevant cases indicates, the principles of Eleventh Amendment immunity and State sovereign immunity are often blended and addressed collectively. In *Whole Woman's Health v. Jackson*, __ U.S.__, 142 S. Ct. 522, 532 (2021), the Supreme Court stated: "Generally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity."

Immunity under the Eleventh Amendment bars suit not only against a state, but also against an instrumentality of a state, such as a state agency, sometimes referred to as an "arm of the state." *See Pennhurst*, 465 U.S. at 101–02 ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Pense*, 926 F.3d at 100; *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2015); *Bland v. Roberts*, 730 F.3d 368, 389 (4th Cir. 2013); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479 (4th Cir. 2005). Put another way, immunity applies when "'the governmental entity is so connected to the State that the legal action against the entity would . . . amount to the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties.'" *Lane v. Anderson*, 660 F. App'x 185, 195–96 (4th Cir. 2016) (quoting *Cash v. Granville Cnty. Bd. of Educ.*, 242 F.3d 219, 224 (4th Cir. 2001)) (cleaned up).

Moreover, the Supreme Court said in *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted): "[A] suit against a state official in his or her official capacity

is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself."  *See also Pennhurst*, 465 U.S. at 101–02 ("And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief."); *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) (per curiam) ("The general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter.").

On the other hand, Eleventh Amendment immunity "does not immunize political subdivisions of the state, such as municipalities and counties, even though such entities might exercise a 'slice of state power.'" *Ram Ditta by & through Ram Ditta v. Md. Nat'l Cap. Park & Plan. Comm'n*, 822 F.2d 456, 457 (4th Cir. 1987) (quoting *Lake Country Ests., Inc. v. Tahoe Reg'l Plan. Agency*, 440 U.S. 391, 401 (1979)).  And, "the burden of proof falls to an entity seeking immunity as an arm of the state, even though a plaintiff generally bears the burden to prove subject matter jurisdiction." *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 176 (4th Cir. 2019) (citing *Hutto*, 773 F.3d at 543); *see DiCocco v. Garland*, 18 F.4th 406, 414 (4th Cir. 2021).

In addition, Eleventh Amendment immunity protects "State officials acting in their official capacities from being sued in federal court without their consent."  *Murphy v. Commonwealth of Va.*, 2022 WL 17484286, at *1 (4th Cir. Dec. 7, 2022) (per curiam).  But, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)).  Moreover, personal capacity suits, which seek to impose individual liability on a government official for an action taken under color of State law, are also not barred by the Eleventh Amendment.  *Murphy*, 2022 WL 17484286, at *2.

"A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense." *Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 35 (2012); *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United States.") (internal quotation marks and citation omitted); *see also Quern v. Jordan*, 440 U.S. 332, 345 (1979) ("[Section] 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States[.]"); *Allen v. Cooper*, 895 F.3d 337, 347 (4th Cir. 2018), *aff'd*, 140 S. Ct. 994 (2020).

However, "[t]he Eleventh Amendment bar to suit is not absolute." *Feeney*, 495 U.S. at 304.  And, "[a] State remains free to waive its Eleventh Amendment immunity from suit in federal court." *Lapides*, 535 U.S. at 618.  As to the exceptions to Eleventh Amendment immunity, the Court explained in *Lee-Thomas*, 666 F.3d 244 at 249 (internal quotations omitted):

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) . . . .  Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) . . . .  Third, a State remains free to waive its Eleventh Amendment immunity from suit in a federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002).

Of relevance here, by statute a State may waive its Eleventh Amendment immunity from suit in federal court. *Pense*, 926 F.3d at 100 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985), *superseded on other grounds, as recognized in Lane v. Pena*, 518 U.S. 187, 198 (1996)); *see Lapides*, 535 U.S. at 618; *Lee-Thomas*, 666 F.3d at 249.  But, the test to determine whether a state has waived its immunity from suit in federal court is a "stringent" one. *Atascadero State Hosp.*, 473 U.S. at 240; *see Pense*, 926 F.3d at 101.

A "general waiver" is not sufficient to waive Eleventh Amendment immunity. *Pense*, 926 F.3d at 101. Under *Atascadero State Hosp.*, 473 U.S. at 254, a court may find that a state has waived its immunity "only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." (internal quotation marks and alteration omitted); *accord Pense*, 926 F.3d at 101; *Lee-Thomas*, 666 F.3d at 250–51. In other words, the waiver must be both clear and express. *Feeney*, 495 U.S. at 305; *see Atascadero State Hosp.*, 473 U.S. at 241. Notably, "a State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation." *Coll. Sav. Bank v. Fla. Prepaid Post Secondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999); *see Pense*, 926 F.3d at 101.

When a state voluntarily removes a case to federal court, it implicates the distinction between immunity under the Eleventh Amendment and the "broader" doctrine of State sovereign immunity. *Williams I*, 850 F. App'x at 174. The Supreme Court has held that a state waives its Eleventh Amendment immunity when it voluntarily removes a case to federal court. *See Lapides*, 535 U.S. at 619–20. In contrast, "a state does not waive its [State] sovereign immunity by removing a suit to federal court." *Williams I*, 850 F. App'x at 174 (citing *Passaro*, 935 F.3d at 247); *see also Williams II*, 2022 WL 7375983, at *1. Rather, "a state's removal of a suit to federal court waives sovereign immunity only if the state has consented to suit in its own courts." *Biggs v. N.C. Dep't of Pub. Safety*, 953 F.3d 236, 241 (4th Cir. 2020). And, as noted, federal law requires that a state make a "clear statement" in order to waive its sovereign immunity. *Passaro*, 935 F.3d at 248.

### 3. Maryland Law

"The doctrine of sovereign immunity has long been recognized as applicable in actions against the State of Maryland and its official representatives." *Stern v. Bd. Of Regents, Univ. Sys.*

*Of Md.*, 380 Md. 691, 700, 846 A.2d 996, 1001 (2004).[8]  The Maryland Court of Appeals has held that a suit cannot be brought against the State "unless the General Assembly has specifically waived the doctrine" of sovereign immunity.  *Id.* at 701, 846 A.2d at 1001.  Moreover, Maryland courts "construe legislative dilution of governmental immunity narrowly in order to avoid weakening the doctrine of sovereign immunity by judicial fiat."  *Id.* at 720, 846 A.2d at 1012–13.

The Maryland General Assembly has waived State sovereign immunity for "tort action[s] in a court of the State" through the Maryland Tort Claims Act ("MTCA"), § 12-104(a)(1) of the State Government Article ("S.G.") of the Maryland Code (2021 Repl. Vol.).  It states, *id.*: "[T]he immunity of the State and of its units is waived as to a tort action, in a court of the State . . . ."  And, the MTCA expressly states, S.G. § 12-103: "This subtitle does not . . . waive any right or defense of the State or its units, officials, or employees in an action in a court of the United States or any state, including any defense that is available under the 11th Amendment to the United States Constitution."

The Fourth Circuit recently recognized in *Williams II*, 2022 WL 7375983, at *2, that "there is no conclusive state appellate precedent or statute that controls" the meaning of "tort action" as it is used in the MTCA.[9]  Moreover, the Court observed that the Maryland Court of Appeals "has

---

[8] In Maryland's general election of November 2022, the voters of Maryland approved a constitutional amendment to change the name of the Maryland Court of Appeals to the Supreme Court of Maryland.  And, the voters also approved changing the name of the Maryland Court of Special Appeals to the Appellate Court of Maryland.  These changes went into effect on December 14, 2022.  *See* Press Release, Maryland Courts, Voter-approved constitutional change renames high courts to Supreme and Appellate Court of Maryland (Dec. 14, 2022), https://www.courts.state.md.us/media/news/2022/pr20221214#:~:text=Effective%20immediately%2C%20the%20Court%20of,the%20Appellate%20Court%20of%20Maryland.  However, to avoid confusion, I will refer to the Maryland courts by the names that were in effect when the cited cases were decided.

[9] The parties here did not cite *Williams I*, 850 F. App'x 172, or *Williams II*, 2022 WL 7375983, or either of its related district court decisions.

never addressed the specific question of whether Section 12-104's waiver covers federal statutory claims." *Id.*

Both *Williams I* and *Williams II* arise from the case of *Williams v. Morgan State Univ.*, GLR-19-00005, 2019 WL 4752778 (D. Md. Sept. 30, 2019). In that case, Williams initially filed suit in a Maryland State court, alleging wrongful termination and defamation claims, as well as retaliation in violation of two federal whistleblower statutes. Defendant removed the case to federal court. The district court dismissed the federal claim on the ground that it was barred by Eleventh Amendment immunity. *Id.* at *5–6. On appeal, the Fourth Circuit vacated the district court's dismissal of the federal claim in an unpublished, per curiam opinion, concluding that Eleventh Amendment immunity did not apply under the circumstances. *Williams I*, 850 F. App'x at 173–74. And, it remanded the case to the district court to determine whether Maryland's state sovereign immunity barred the claim. *Id.*

On remand, the district court considered whether the Maryland legislature waived immunity by enacting the MTCA, S.G. § 12-101 *et seq. See Williams v. Morgan State Univ.*, GLR-19-0005, 2021 WL 3144890, at *3 (D. Md. July 26, 2021). The court again dismissed the federal claim, finding that "Maryland's waiver of sovereign immunity as to tort claims did not extend to claims arising under federal statutes." *Id.* at *4. The district court reasoned that "the phrase 'tort action' has an ordinary meaning and it does not include federal statutory causes of action." *Id.* at *6. On appeal, the Fourth Circuit considered "whether that conclusion was correct." *Williams II*, 2022 WL 7375983, at * 2.

The Fourth Circuit concluded that the meaning of "tort action" in the MTCA "raises a question of Maryland law for which there is no controlling precedent." *Id.* at *3. In its view, "whether Maryland has waived immunity for Williams's claims is best answered by the Court of

Appeals of Maryland." *Id.* Thus, the Court certified the following question to Maryland's high court, *id.* (alteration in *Williams II*):

> Does the waiver of sovereign immunity for "tort action[s]" in the Maryland Tort Claims Act, Md. Code Ann., State Gov't § 12-104(a)(1), extend to federal statutory claims, including those where the alleged harm is wrongful termination in retaliation for whistleblowing?

The case is currently pending in the Supreme Court of Maryland. *See Certified Questions of Law Currently Before the Supreme Court*, MD. COURTS, https://www.courts.state.md.us/coappeals/certifiedquestions (last accessed March 7, 2023).

The claims in this case arise under a federal statute, 42 U.S.C. § 1983.  But, § 1983 "by itself does not protect anyone against anything." *Chapman v. Houston Welfare Rts. Org.*, 441 U.S. 600, 617 (1979).  Rather, "§ 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.*, rights independently 'secured by the Constitution and laws' of the United States." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) (quoting 42 U.S.C. § 1983).  Therefore, it is not entirely clear that the *Williams* case, pending in the Supreme Court of Maryland, will address whether the waiver of sovereign immunity for "tort action[s]" in the MTCA extends to federal *constitutional* claims raised under the umbrella of a federal statute.  And, I am not aware of controlling precedent as to whether the MTCA waives the State's sovereign immunity as to federal constitutional claims.[10]

---

[10] I pause to note that, although not directly on point, there is case law that provides some guidance on this issue.  The Maryland Court of Appeals has said: "When considering waivers of sovereign immunity, this Court and the Court of Special Appeals have strictly construed such waivers in favor of the sovereign." *Bd. of Educ. of Baltimore Cnty. v. Zimmer-Rubert*, 409 Md. 200, 212, 973 A.2d 233, 240 (2009).  The *Zimmer-Rubert* Court construed § 5-518(c) of the Courts and Judicial Proceedings Article ("C.J.") of the Maryland Code in regard to a claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*  At the time, C.J. § 5-518(c) provided: "A county board of education may not raise the defense of sovereign immunity to any claim of $100,000 or less."  The Maryland Court of Appeals concluded that the statute constituted a waiver of both State sovereign immunity and Eleventh Amendment immunity, in federal and State courts, subject to the statutory cap. *Id.* at 216–17, 973 A.2d at 242–43.

Given the pendency of the matter in the Supreme Court of Maryland, I decline to rule at this time as to whether the waiver of sovereign immunity in the MTCA for tort actions extends to federal statutory or constitutional claims in federal court.

Regardless, the claims against defendants in their official capacities fail as a matter of law. Notably, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983" in a suit for damages. *Will*, 491 U.S. at 71; *see also Hafer v. Melo*, 502 U.S. 21, 26 (1991) ("The Court then addressed the related question whether state officials, sued for monetary relief in their official capacities, are persons under § 1983. We held that they are not.") (discussing *Will*, 491 U.S. at 71). This conclusion is not altered by the State's removal of the case to this Court. *See Bellamy v. Borders*, 727 F. Supp. 247, 250 (D.S.C. 1989) ("[T]he present § 1983 claim is not cognizable against the defendant state agencies regardless of whether they have waived their immunity to suit under the eleventh amendment."); *see also Lowery v. Prince George's Cnty., Md.*, 960 F. Supp. 952, 959 n.14 (D. Md. 1997) ("The definition of 'person' under § 1983 is a separate issue from the Eleventh Amendment.").

The conclusion that § 1983 claims are not cognizable against the State, despite its waiver of Eleventh Amendment immunity through removal, is supported by the State's handling of these claims in its own courts. As noted, "a state's removal of a suit to federal court waives sovereign

---

Federal district courts in Maryland have rejected the conclusion that the MTCA waives State sovereign immunity under § 1983 or other federal statutes. For example, in *Est. of Leysath v. Maryland*, GJH-17-1362, 2018 WL 1225087, at *4 (D. Md. Mar. 6, 2018), the district court determined that the plaintiffs "incorrectly argue that the MTCA constitutes a legislative waiver of sovereign immunity for claims under § 1983." And, in *Bozarth v. Md. State Dep't of Educ.*, DLB-19-3615, 2021 WL 1225448, at *11 (D. Md. Mar. 31, 2021), the district court stated: "Because the MTCA does not act as a waiver of the state's sovereign immunity as to claims arising under Title I of the ADA or the FMLA, the State retains immunity in this case—under the Eleventh Amendment and the common law principle of sovereign immunity."

immunity only if the state has consented to suit in its own courts." *Biggs*, 953 F.3d at 241.  And, pursuant to both State and Supreme Court precedent, Maryland courts have dismissed § 1983 claims against the State and its officials in their official capacities, on the grounds that they are not persons under § 1983.  *See, e.g.*, *Okwa v. Harper*, 360 Md. 161, 193, 757 A.2d 118, 135 (2000) ("A state public official, sued in his or her official capacity, is not considered a 'person' when a plaintiff brings a § 1983 action for monetary damages."); *Ritchie v. Donnelly*, 324 Md. 344, 355, 597 A.2d 432, 437 (1991) ("With regard to an action for money damages, neither a state nor a state agency nor a state official sued in his official capacity is a "person" within the meaning of § 1983. Thus, an action for money damages under § 1983 cannot be maintained against a state, a state agency, or a state official sued in his official capacity."); *Md. Bd. of Physicians v. Geier*, 241 Md. App. 429, 483, 211 A.3d 543, 574 (2019) ("The statute [section 1983] does not authorize an action for damages against a state or a state agency, neither of which are 'person[s]' within the meaning of the statute."); *Samuels v. Tschechtelin*, 135 Md. App. 483, 556, 763 A.2d 209, 248 (2000) ("[A] plaintiff cannot maintain a § 1983 action against a state, a state agency, or a state official for money damages.).

Accordingly, the federal constitutional claims brought under § 1983 against defendants, in their official capacities, are dismissed, with prejudice.

### 4. Respondent Superior

In his Amended Complaint, plaintiff asserts that defendants are "liable for their actions under a theory of Respondeat Superior."  ECF 12, ¶ 33.  However, there is no respondeat superior liability under § 1983.  *Iqbal,* 556 U.S. at 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the

official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Section 1983 requires a showing of personal fault based upon a defendant's own conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights); *see also Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) (same); *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (same). If a plaintiff has not alleged any personal connection between a defendant and a denial of constitutional rights, the claim against that defendant must fail. *Vinnedge*, 550 F.2d at 928.

The Fourth Circuit has stated: "A supervisor can only be held liable for the failings of a subordinate under certain narrow circumstances." *Green v. Beck*, 539 F. App'x 78, 80 (4th Cir. 2013); *see Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (determining that there is no respondeat superior liability under § 1983). Pursuant to § 1983, liability for supervisory officials "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)); *see Campbell v. Florian*, 972 F.3d 385, 398 (4th Cir. 2020).

With respect to a supervisory liability claim in a § 1983 action, a plaintiff must adequately allege, *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994):

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an

affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*See also Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014).

To qualify as "pervasive," a plaintiff must demonstrate that the challenged conduct "is widespread, or at least has been used on several different occasions." *Shaw*, 13 F.3d at 799. Therefore, it is insufficient to point "to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence . . . nor can he reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Id.* (quoting *Slakan*, 737 F.2d at 373). But, a supervisor's "continued inaction in the face of documented widespread abuses . . . provides an independent basis" for § 1983 liability against that official for his deliberate indifference or acquiescence to "the constitutionally offensive conduct of his subordinates." *Slakan*, 737 F.2d at 373; *see Shaw*, 13 F.3d at 799.

However, the Supreme Court explained in *Iqbal*, 556 U.S. at 677, that "a supervisor's mere knowledge" that his subordinates have engaged in unconstitutional conduct is insufficient to give rise to liability; instead, a supervisor is only liable for "his or her own misconduct." The *Iqbal* Court also "explained that in order to state a claim for supervisory liability, 'a plaintiff must plead that *each* [supervisory] defendant, through the official's *own individual actions,* has violated the Constitution.'" *Evans v. Chalmers*, 703 F.3d 636, 660–61 (4th Cir. 2012) (Wilkinson, J., concurring) (emphasis and alteration in *Evans*) (quoting *Iqbal*, 556 U.S. at 676). The *Iqbal* Court concluded that the allegations as to supervisory liability, which were based on specific claims of each official's involvement in establishing and executing the policies, were "bare assertions" that amounted to "nothing more than a 'formulaic recitation of the elements' of a

constitutional discrimination claim." *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 554–55); *see also Langford v. Joyner*, ___ F.4th ___, 2023 WL 2335957 (4th Cir. March 2, 2023).

The Amended Complaint suffers from the kind of inadequacies addressed by the Supreme Court in *Iqbal*. First, although plaintiff names Treasurer Davis as a defendant, plaintiff does not mention him at all in the text of the Amended Complaint itself. *See* ECF 12. Indeed, in the Opposition, plaintiff concedes, ECF 19-1 at 4 n.1:

> It is true that the Complaint does not mention Defendant Davis' name in the body of the complaint. In fact, Defendant Davis was not the State Treasurer at the time of the original injury experienced by the Plaintiff. However, since the injuries that the Plaintiff experienced and continues to experience are ongoing, Defendant Davis is cognizant of and responsible for the actions of his employees in this regard. Plaintiff will need to amend the complaint to include specific allegations with regard to Defendant Davis, and would request an opportunity to do so before any answer is filed by the Defense.

Additionally, the references to Green and Hill are contained in the "Parties" section. In a conclusory fashion, plaintiff asserts that Green was "aware of DPSCS's policies and practices regarding violence among prisoners" and "knowledgeable of the requirements of federal and state law." ECF 12, ¶ 5. In addition, plaintiff asserts that Hill was aware of DPSCS "policies and practices regarding threats and violence among prisoners," as well as obligations under federal law. *Id.* ¶ 6. But, the Amended Complaint contains no allegations that Green or Hill personally participated in the events underlying plaintiff's claims or were even aware of shower incidents. Therefore, pursuant to *Iqbal*'s standard, the allegations in the Amended Complaint, standing alone, cannot give rise to a supervisory liability claim against them.

In *Iqbal*, the Supreme Court determined that allegations that defendants "'knew of, condoned, and willfully and maliciously agreed to subject [the plaintiff]' to harsh conditions of confinement 'as a matter of policy . . . and for no legitimate penological interest'" were "not entitled to the assumption of truth." *Id.* at 680 (quoting the respondent's complaint), The

allegations against Green and Hill are even less precise than those in *Iqbal*. Plaintiff does not specify the policies and practices to which he refers for any given charge, nor does he indicate what role defendants played in promulgating or effectuating the alleged policy or custom. Moreover, he does not include facts as to each defendant that, if proved, would show that that they were aware of violence among prisoners in the shower at ECI-E.

Liability does not attach merely because of defendants' positions or titles. Yet, that is clearly the basis of plaintiff's claims.

Elsewhere, the Amended Complaint simply provides "formulaic recitation[s] of the elements" of constitutional claims against defendants, *Iqbal*, 556 U.S. at 681, without identifying any unconstitutional conduct or violation allegedly perpetrated by any particular defendant. Indeed, plaintiff makes no attempt to describe personal conduct of any of the defendants and admits that he is "without information as to the exact or specific factual involvement of each Defendant." ECF 19-1 at 4.

Simply put, plaintiff has failed to allege any facts demonstrating that defendants had even "mere knowledge" that any subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to plaintiff, let alone that they were indifferent to or tacitly approved it. His "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a constitutional violation against a government official. *See Iqbal*, 556 U.S. at 681, 685.

Furthermore, a lack of discovery cannot be used to excuse plaintiff's generic allegations on the premise that, if allowed to go forward, the Amended Complaint might "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Because plaintiff's "mere conclusory statements . . . do not suffice" to plead a plausible claim against Davis, DPSCS, Green, or Hill, the

claims against them fail.  *Iqbal*, 556 U.S. at 678.  And, in any event, plaintiff's claims would still fail under the Eighth and Fourteenth Amendments, discussed next.

### 4. Eighth Amendment (Count 1)

In Count 1, plaintiff brings suit pursuant to the Eighth Amendment "for Defendants' infliction of cruel and unusual punishments."  ECF 12, ¶ 36.  In particular, plaintiff alleges: "Defendants' actions and omissions . . . with regard to Mr. Jordan and the failure to protect him from threats and physical altercations at this shower facility, despite their awareness of the high possibility of these threats and altercations as a result of the configuration of the showered facility at ECIE, and the fact that others had previously been injured in physical altercations as a result of the problems with this shower facility, subject him to cruel and unusual punishment."  *Id.*

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016).  But, the Eighth Amendment "proscribes more than physically barbarous punishments."  *Estelle*, 429 U.S. at 103.  It also "embodies" the "'concepts of dignity, civilized standards, humanity, and decency . . . .'"  *Id.* (citation omitted).

"Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment."  *DeLonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  It "protects inmates from inhumane treatment and conditions while imprisoned."  *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).  Moreover, the protection conferred by the Eighth Amendment imposes on prison officials an affirmative "obligation to take reasonable measures to guarantee the safety of . . . inmates."

*Whitley v. Albers*, 475 U.S. 312, 319-20 (1986); *see Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016); *cf. DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 989 U.S. 189, 199-200 (1989) (stating that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being"); *John Doe 4 v. Shenandoah Valley Juvenile Center Comm'n*, 985 F.3d 327, 338 (4th Cir. 2021) (same).

In order to plead cruel and unusual punishment, a prisoner must allege facts in support of "two elements": that "the deprivation of [a] basic human need was *objectively* sufficiently serious," and that "*subjectively* the officials acted with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F. 3d 162, 166 (4th Cir. 1995) (emphasis in original) (citations omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called "punishment," and absent severity, such punishment cannot be called "cruel and unusual." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson*, 501 U.S. at 298-300).

The Fourth Circuit has observed that "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'" *Thompson v. Commonwealth of Va.*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley*, 475 U.S. at 319-20). The deliberate indifference standard applies to cases alleging failure to safeguard an inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance. *See Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303. Here, plaintiff argues that defendants "were deliberately indifferent in both their own conduct and in managing their subordinates, which indifference caused the constitutional violations." ECF 12, ¶ 37.

Notably, "not every injury suffered by a prisoner at the hands of another 'translates into constitutional liability for prison officials responsible for the victim's safety.'" *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 834).  Thus, a two-part inquiry that includes both an objective and a subjective component must be satisfied before liability can be established.  *See Raynor*, 817 F.3d at 127.

An Eighth Amendment deliberate indifference claim is analyzed under a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97–98 (quoting *Farmer*, 511 U.S. at 837–38); *see Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209 (4th Cir. 2017).  The Fourth Circuit has characterized this standard as an "exacting" one. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

Objectively, a plaintiff "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury.  *Danser v. Stansberry*, 772 F.3d 340, 346-47 (4th Cir. 2014).  The objective inquiry requires the court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

The subjective component requires a showing "that the prison official had a 'sufficiently culpable state of mind,' which . . . consists of 'deliberate indifference to inmate health or safety.'" *Raynor*, 817 F.3d at 127 (quoting *Farmer*, 511 U.S. at 834).  In the context of a claim concerning medical care, for example, "deliberate indifference" requires that the prison official have "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed

by the official's action or inaction." *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir 2021) (quoting *Jackson*, 775 F.3d at 178).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U.S. at 298-99; *see also Washington v. Housing Authority of the City of Columbia*, 58 F. 4th 170, 179 (4th Cir. 2023) ("To prove deliberate indifference, a plaintiff must show 'that the [defendant] subjectively recognized a substantial risk of harm and that his actions were inappropriate in light of the risk.'" (Quoting *Dean ex rel. Harkness v. McKinney*, 976 F.3d 407, 416 (4th Cir. 2020)).

Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see King*, 825 F.3d at 219. The Fourth Circuit has said: "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see Young v. City of Mount Ranier*, 238 F.3d 567. 575-76 (4th Cir. 2001) ("Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care.").

Eighth Amendment liability "'must involve more than ordinary lack of due care for the prisoner's interests or safety . . . . It is *obduracy and wantonness, not inadvertence or error in good faith,* that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . .'" *Wilson*, 501 U.S. at 299 (quoting *Whitley*, 475 U.S. 312 at 319) (emphasis added in *Wilson*). What the Court said in *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999), *cert. denied*, 529 U.S. 1067 (2000), is pertinent: "Deliberate indifference is a very high standard—a showing of

mere negligence will not meet it . . . .  [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . ."

In other words, "'the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so.'"  *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)).  But, conduct is not actionable under the Eighth Amendment unless it transgresses bright lines of clearly-established preexisting law.  *See Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

Plaintiff's allegations do not satisfy the "exacting" standard.  *Jackson*, 775 F.3d at 178.  As noted previously, the individual defendants are barely mentioned in the Amended Complaint.  And, the Amended Complaint is devoid of facts demonstrating that they were aware of a serious risk of harm to plaintiff in regard to the shower.  In other words, plaintiff does not allege facts that, if proven, would show the defendants "kn[ew] of and disregard[ed]" a substantial risk to his health or safety.  *Thompson*, 878 F.3d at 97.

For instance, plaintiff does not allege that the assailant had a history of violence.  Moreover, plaintiff alleges that inmates have been "assaulted and injured while showering in the area previously," and therefore staff members and officials were "on notice that this area was dangerous, . . . and that staff and officers were needed to monitor the area."  ECF 12, ¶ 28.  However, plaintiff includes no facts to indicate that these particular defendants had notice of a problem with the shower.  His "global manner of pleading" is not sufficient.  *Barrett v. Bd. of Educ. of Johnston Cnty.*, 590 F. App'x 208, 211 (4th Cir. 2014) (per curiam); *see SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015) (in antitrust case, criticizing attempt

to "assemble some collection of defendants and then make vague, non-specific allegations against all of them as a group"), *as amended on reh'g in part* (Oct. 29, 2015).

Although plaintiff asserts that it is "impossible" to "realistically and plausibly plead such things as the officials' 'state of mind'" (ECF 19-1 at 5), it is exactly this type of factual allegation that is required to establish an Eighth Amendment claim.  Absent specific and tailored allegations, including that the harm was reasonably foreseeable but affirmatively ignored with the appropriate indifference or culpable state of mind, plaintiff's claim contains no more than the very type of "un-adorned, the-defendant[s]-unlawfully-harmed-me accusation[s]," without the "factual enhancement" that the Supreme Court cautioned against in *Twombly* and *Iqbal*.  *See Iqbal*, 556 U.S. at 677.

The Fourth Circuit's recent decision in *Langford v. Joyner*, ___ F. 4th ___, 2023 WL 2335957 (4th Cir. March 2, 2023), is instructive.  There, the plaintiff, a former inmate, filed an Eighth Amendment claim against multiple defendants, alleging inadequate medical care.  However, he failed to plausibly allege deliberate indifference on the part of *each* defendant.  *Id*. at *1 (emphasis in original).  In particular, the Court noted that the "complaint makes only collective allegations against all 'Defendants,' without identifying how each individual Defendant personally interacted with Langford or was responsible for the denial of his Eighth Amendment rights."  *Id*. at *2.  Accordingly, the Court concluded that Langford "failed to adequately plead that each Defendant was aware of his medical condition and aware of the risks of failing to treat him," as required to state a plausible Eighth Amendment claim.  *Id*. at *3.

Other courts have also been critical of complaints that "fail[ ] to isolate the allegedly unconstitutional acts of each defendant," *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008), or that "make[ ] only categorical references to 'Defendants,'" *Marcilis v. Twp. of Redford*,

693 F.3d 589, 596 (6th Cir. 2012).  These courts have reasoned that requiring specific factual allegations for each defendant gives fair notice to that defendant of the plaintiff's claim and the underlying factual support.  *See, e.g., Robbins*, 519 F.3d at 1250 ("Given the complaint's use of . . . the collective term 'Defendants' . . . it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."); *Marcilis*, 693 F.3d at 596–97 (collecting cases).

In my view, plaintiff has failed to provide "factual content that allows the court to draw the reasonable inference" that the defendants are liable under the Eighth Amendment.  *Iqbal*, 556 U.S. at 678.  Therefore, as to the four defendants who were served, Count 1 of the Amended Complaint fails as a matter of law.

### 5. Fourteenth Amendment (Count 2)

In Count 2 of the Amended Complaint, plaintiff alleges a violation of his right to due process under the Fourteenth Amendment, because defendants "develop and maintain . . . policies [and] procedures . . . regarding the treatment of prisoners who are exposed to . . . the shower facility at [ECI-E] that are conducive to and have been the site of increased amounts of violent and physical encounters among inmates . . . ."  ECF 12, ¶ 43.  He also alleges that defendants were "deliberately indifferent in failing to provide the requisite training and supervision to DPSCS staff or the requisite protection and assistance to the Plaintiff."  *Id*. ¶ 46.

The Fourteenth Amendment's Due Process Clause guarantees that no state shall "deprive any person of . . . liberty . . . without due process of law."  A plaintiff may bring a civil action to redress due process violations under 42 U.S.C. § 1983. But, Fourth Circuit precedent "does not hold that harsh or atypical prison conditions in and of themselves provide the basis of a liberty interest giving rise to Due Process protection."  *Prieto v. Clarke*, 780 F.3d 245, 250 (4th Cir. 2015).

To establish a substantive due process claim, a plaintiff must first show the existence of a protected property or liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

In general, the Due Process Clause of the Fourteenth Amendment protects the rights of pretrial detainees. *Hill v. Nicodemus*, 979 F.2d 987, 990-91 (4th Cir. 1992); *see also Brown v. Harris*, 240 F.3d 383, 388 (stating, *inter alia*, that if the defendant "was a pretrial detainee rather than a convicted prisoner, then the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, mandates the provision of medical care to *detainees* who require it") (emphasis in *Brown*) (internal quotation marks omitted; citation omitted) (citing, *inter alia*, *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983), and *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)).  However, plaintiff was serving a judgment of conviction at the time of the incident.

"[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976).  But, courts generally defer to decisions made by officials relating to their administration of a prison facility. *Bell*, 441 U.S. at 547.  As the Supreme Court has cautioned, "[t]he difficulties of operating a detention center must not be underestimated by the courts." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 326 (2012).

Plaintiff's due process claim fails plausibly to allege that defendants committed a constitutional violation that could be the basis for a failure to train claim. In the Fourth Circuit, "[t]he law is quite clear . . . that a section 1983 failure-to-train claim cannot be maintained against a governmental employer in a case where there is no underlying constitutional violation by the

employee." *Young*, 238 F.3d 567 at 579.  Such a claim against a supervisor is "actionable under section 1983 only where . . . the failure to train [the subordinates] in a relevant respect evidences . . . deliberate indifference" to constitutionally protected rights.  *Jordan v. Jackson*, 15 F.3d 333, 341 (4th Cir. 1994) (citations omitted).

As discussed, plaintiff has failed plausibly to allege the commission of any constitutional violation by these defendants.  Nor has plaintiff alleged that these defendants were aware of such alleged violations or otherwise exhibited deliberate indifference to plaintiff's constitutional rights. Therefore, Count 2 of the Amendment Complain fails to state a claim.

### 6. Qualified Immunity

Defendants assert qualified immunity as to each of plaintiff's federal law claims, to the extent that these claims are brought against them in their individual capacity. ECF 13-2 at 13-15.

"Qualified immunity bars § 1983 actions against government officials in their individual capacities 'unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.'"  *Barrett v. PAE Government Services, Inc*., 975 F.3d 416, 428 (4th Cir. 2020) (quoting *District of Columbia v. Wesby*, ___ U.S. ___, 138 S. Ct. 577, 589, (2018)) (cleaned up); *see also Halcomb v. Ravenell*, 992 F.3d 316, 319 (4th Cir. 2021); *Humbert v. Mayor and City Council of Balt*., 866 F.3d 546, 555 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 2602 (2018); *Osborne v. Georgiades*, 679 F. App'x 234, 237 (4th Cir. 2017); *Scinto*, 841 F.3d 219, 235 (4th Cir. 2016); *Hunter v. Town of Mocksville*, 789 F.3d 389, 401 (4th Cir. 2015). In *Owens*, 767 F.3d at 395, the Fourth Circuit reiterated: "Qualified immunity protects government officials from liability for 'civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (Quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *see also Barrett*, 975 F.3d at 428-29; *Betton v. Belue*, 942 F.3d 184, 190 (4th Cir. 2019); *Wilson v. Prince George's Cty.*, 893 F.3d 213, 219 (4th Cir. 2018); *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015). The cases are legion in support of these principles. *See, e.g., Wesby*, 138 S. Ct. at 589; *Reichle v. Howards*, 566 U.S. 658, 664 (2012); *Saucier v. Katz*, 533 U.S. 194, 206 (2001); *Robertson v. Anderson Mill Elementary School*, 989 F.3d 282, 288 (4th Cir. 2021); *Ray v. Roane*, 948 F.3d 222, 229-30 (4th Cir. 2020); *Hupp v. Cook*, 931 F.3d 307, 317 (4th Cir. 2019); *Attkisson v. Holder*, 925 F.3d 606, 623 (4th Cir. 2019); *Williamson v. Stirling*, 912 F.3d 154, 186 (4th Cir. 2018); *Wilson*, 893 F.3d at 219; *Sims v. Labowitz*, 885 F.3d 254, 260 (4th Cir. 2018); *Spivey v. Norris*, 731 F. App'x 171, 175 (4th Cir. 2018); *O'Neal v. Rollyson*, 729 F. App'x 254, 255 (4th Cir. 2018) (per curiam); *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 582-83 (4th Cir. 2017); *Occupy Columbia v. Haley*, 738 F.3d 107, 118 (4th Cir. 2013); *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013); *Merchant v. Bauer*, 677 F.3d 656, 661 (4th Cir. 2012), *cert. denied*, 568 U.S. 1068 (2012).

The cases teach that qualified immunity "'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" *Lane v. Franks*, 573 U.S. 228, 243 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)); *accord Robertson*, 989 F.3d at 288 ("'[I]n gray areas, where the law is unsettled or murky, qualified immunity affords protection to' government officials who take 'action[s] that [are] not clearly forbidden.'") (quoting *Occupy Columbia*, 738 F.3d at 118); *Braun v. Maynard*, 652 F.3d 557, 560 (4th Cir. 2011) (observing that qualified immunity protects government officials from liability for " 'bad guesses

in gray areas' ") (citation omitted).  In other words, "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *accord Stanton v. Sims*, 571 U.S. 3, 5-6 (2013) (per curiam).

Thus, "even when the facts in the record establish that the officer's conduct violated a plaintiff's constitutional rights, the officer still is entitled to immunity from suit 'if a reasonable person in the [officer's] position could have failed to appreciate that his conduct would violate those rights.'" *Wilson*, 893 F.3d at 219 (quoting *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991)); *see also Williams v. Strickland*, 917 F.3d 763, 768 (4th Cir. 2019); *Greene v. Feaster*, 733 F. App'x 80, 82 (4th Cir. 2018) (per curiam) ("Even when a prison official [is shown to have violated a constitutional right of a plaintiff], qualified immunity will shield him from liability as long as his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' ") (quoting *Goines*, 822 F.3d at 170).

Conversely, an official is not entitled to qualified immunity if he deprived an individual of a constitutional right and that right was clearly established at the time of the violation. *Pearson*, 555 U.S. at 231.  Put another way, qualified immunity turns on the "objective reasonableness of an official's conduct, as measured by reference to clearly established law," *Harlow*, 457 U.S. at 818, and so an officer who makes an honest but objectively unreasonable mistake is not protected by qualified immunity.

Notably, "a government official who is sued in his individual capacity may invoke qualified immunity." *Bland*, 730 F.3d at 391; *see Harlow*, 457 U.S. at 818. Moreover, "[t]he protection of qualified immunity applies regardless of whether the government official's error is

'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'"
*Pearson*, 555 U.S. at 231.

As the Fourth Circuit has explained: "In determining whether defendant government officials are protected by qualified immunity, the court considers both 'whether a constitutional right [was] violated on the facts alleged' and 'whether the right was clearly established' at the time of the conduct in question." *Scinto*, 841 F.3d at 235 (citations omitted); *see Cannon v. Village of Bald Head Island, NC*, 891 F.3d 489, 497 (4th Cir. 2018).   Thus, the qualified immunity analysis involves two inquiries: (1) whether the facts alleged, "[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a constitutional [or statutory] right," *Saucier*, 533 U.S. at 201; and (2) whether the right at issue "'was clearly established in the specific context of the case—that is, [whether] it was clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted.'"  *Merchant*, 677 F.3d at 662 (quoting *Figg v. Schroeder*, 312 F.3d 625, 635 (4th Cir. 2002)); *see Wesby*, 138 S. Ct. at 589; *Tolan v. Cotton*, 572 U.S. 650, 655 (2014) (per curiam); *Ray*, 948 F.3d at 226; *Owens*, 767 F.3d at 395-96.

If an officer is shown to have violated the rights of a plaintiff, the court must then "evaluate whether the right at issue was 'clearly established' at the time of the officer's conduct."  *Wilson*, 893 F.3d at 219.  This is a question of law for the court to resolve.  *Ray*, 948 F.3d at 228; *Pritchett v. Alford,* 973 F.2d 307, 312 (4th Cir. 1992).  The second inquiry "turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken."  *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

If the law at the time of the alleged violation was not "clearly established," the official will be entitled to qualified immunity, because "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow*, 457 U.S. at 818.  On the other hand, "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Id*. at 818-19.

Of relevance here, the qualified immunity analysis applies only to plaintiff's federal law claims.  "[U]nder Maryland law, federal qualified immunity is not a defense for state constitutional torts." *Borzilleri v. Mosby*, 189 F. Supp. 3d 551, 560 n.4 (D. Md. 2016), *aff'd*, 874 F.3d 187 (4th Cir. 2017).  Thus, the defense is unavailable with regard to plaintiff's State law claims.  Further, qualified immunity offers no defense to government officials in their official capacities.  *See Carter v. Maryland*, JKB-12-1789, 2012 WL 6021370, at *5 (D. Md. Dec. 3, 2012) ("Qualified immunity does not apply to suits against individuals sued in their official capacities.") (citing *Brandon v. Holt*, 469 U.S. 464, 471-73 (1985)).

Defendants argue that plaintiff has not stated a plausible claim that the defendants violated a constitutional right under the Eighth or Fourteenth Amendments.  ECF 13-2 at 14.  Defendants also claim that, "[e]ven if Plaintiff had stated a plausible claim that the defendants violated a constitutional right, Defendants would still be entitled to qualified immunity because 'the right's contours were [not] sufficiently definite that any reasonable official in [the defendants'] shoes would have understood that [they were] violating it.'"  *Id*. at 14-15 (quoting *San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015) (first alteration added)).[11]

---

[11] Defendants do not clarify what right they claim is not sufficiently definite.

As demonstrated above, plaintiff has failed to state a constitutional claim upon which relief may be granted against defendants under the Eighth or Fourteenth Amendments. Therefore, I need not make a determination as to whether defendants are entitled to qualified immunity.

### B. State Law Claims[12]

Plaintiff's remaining claims are predicated on State law. He asserts two State constitutional claims and three State tort claims: "Violations of Maryland Declaration of Rights/State Constitutional Claim" under Articles 2, 19, 24, and 26 (Count 3); "Violations of Articles 16 and 25 of the Maryland Declaration of Rights" (Count 4); "Vicarious Liability" (Count 5); "Negligence" (Count 6); and "Gross Negligence" (Count 7). ECF 12, ¶¶ 49-81.

### 1. Maryland Prison Litigation Act

Defendants argue that the State law claims must be dismissed because plaintiff failed to "demonstrate that he exhausted" his administrative remedies, pursuant to the Maryland Prisoner Litigation Act ("MPLA") §§ 5-1001 *et seq.* of the Courts and Judicial Proceedings Article ("C.J.") of the Maryland Code (2020 Repl. Vol.). ECF 13 at 20. I agree.

The MPLA was enacted by the Maryland General Assembly in 1997 as a complement to the Federal Prison Litigation Reform Act, ("PLA"), 42 U.S.C. § 1997e. *See Harris v. McKenzie*, 241 Md. App. 672, 679, 211 A.3d 685, 689 (2019). Its purpose is to "discourage frivolous claims from burdening state government by inhibiting cases against the [Division of Correction] and its officials and employees from entering the court system, thereby also saving judicial resources, and

---

[12] Jurisdiction for the State law claims in Counts 3 through 7 is governed by the doctrine of supplemental jurisdiction, under 28 U.S.C. § 1367. Pursuant to § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." Because I have granted plaintiff leave to file a second amended complaint as to his federal claims, I will not reach the issue of supplemental jurisdiction.

relieving the Attorney General from its obligation to defend those claims." *Adamson v. Corr. Med. Servs., Inc.*, 359 Md. 238, 264, 753 A.2d 501, 515 (2000).

Like the PLA, the MPLA, C.J. § 5-1003(a)(1), requires that, prior to filing a civil suit, "the prisoner has fully exhausted all administrative remedies for resolving the complaint or grievance." But, this alone is not sufficient to fulfill its mandate. Rather, it "*requires* the prisoner to attach proof of exhaustion of administrative remedies to his complaint." *Harris*, 241 Md. App. at 681, 211 A.3d at 690 (emphasis in original). In this way, the MPLA is "more onerous" than its federal counterpart. *Evans v. State*, 396 Md. 256, 335, 914 A.2d 25, 72 (2006).

Indeed, the MPLA states, in pertinent part, C.J. § 5-1003(b) (emphasis added):

(1) When a prisoner files a civil action, the prisoner *shall attach to the initial complaint proof that administrative remedies have been exhausted*.
(2) The attachment shall include proof:
    (i) That the prisoner has filed a complaint or grievance with the appropriate agency;
    (ii) Of the administrative disposition of the complaint or grievance; and
    (iii) That the prisoner has appealed the administrative disposition to the appropriate authority, including proof of judicial review, if available.
(3) On receipt of a prisoner's initial complaint that does not have attached to it proof that the prisoner has fully exhausted the administrative remedies available, *the court shall dismiss the case without prejudice* and grant the prisoner reasonable leave to amend the complaint and to provide the proof necessary to demonstrate that the prisoner has fully exhausted the administrative remedies.

Moreover, "[i]n the absence of such proof, the court must dismiss the case, even if the administrative remedies have been exhausted and the only omission is the written proof of same." *Harris*, 241 Md. App. at 681, 211 A.3d at 690; *see also Jones v. Maryland*, DKC-19-1335, 2020 WL 433860, at *5 (D. Md. Jan. 28, 2020) ("[Plaintiff] failed to attach proof that administrative remedies have been exhausted and dismissal of the negligence claim is appropriate."); *Germain v. Bishop*, TDC-17-1289, 2018 WL 4518019, at *4 (D. Md. Sept. 19, 2018) (stating that failure to provide proof that administrative remedies have been exhausted "is grounds for dismissal.").

C.J. § 5-1001(g)(1) defines "prisoner" as "a person who is in the custody of the Department [of Public Safety and Correctional Services] or a local detention center."  Thus, plaintiff is a "prisoner" within the meaning of the MPLA.  And, although plaintiff affirmatively pleaded that he exhausted administrative remedies (ECF 12, ¶¶ 19, 20), he did not attach proof of such exhaustion to the Amended Complaint.

Thus, dismissal of the State constitutional and tort claims is appropriate, without prejudice, and without consideration of whether the Court will exercise supplemental jurisdiction in the event that plaintiff cannot cure the defects in at least one federal claim.  Plaintiff could cure the deficiency under the MPLA, through an appropriate pleading.  Therefore, I will grant leave to file a second amended complaint as to Counts 3 through 7.

### 2. Maryland Tort Claims Act

Defendants next argue that the Court should dismiss Counts 3 through 7 against the individually named defendants because they are immune from suit, pursuant to the MTCA, S.G. § 12-105.  ECF 13-2 at 20.

As noted, "a state's removal of a suit to federal court waives [state] sovereign immunity . . . if the state has consented to suit in its own courts."  *Biggs*, 953 F.3d at 241.  Although there is uncertainty as to whether the MTCA waives sovereign immunity for claims in federal court arising under federal statutes, it is firmly established that the State waives its sovereign immunity as to State constitutional and tort law claims through the MTCA.  S.G. § 12-105 ("[T]he immunity of the State and of its units is waived as to a tort action."); *Newell v. Runnels*, 407 Md. 578, 620 n.28, 967 A.2d 729, 766 n.28 (2009) (stating that the "MTCA does not distinguish between constitutional torts and common law torts.").  Thus, the sovereign immunity analysis discussed earlier does not apply to the State law claims.  I turn to those claims.

### a. The MTCA Generally

The Maryland Tort Law Claims Act offers "a limited waiver of sovereign immunity and 'is the sole means by which the State of Maryland may be sued in tort.'"  *Paulone v. City of Frederick*, 718 F. Supp. 2d 626, 637 (D. Md. 2010) (citation omitted); *see Condon v. Md.-Univ. of Md.*, 332 Md. 481, 492, 632 A.2d 753, 758 (1993); *Mitchell v. Hous. Auth. of Balt. City*, 200 Md. App. 176, 201–02, 26 A.3d 1012, 1027–28 (2011).  The MTCA grants immunity to State personnel from liability "for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence."  Md. Code (2020 Repl. Vol.), § 5-522(b) of the Courts and Judicial Proceedings Article ("C.J."); *see also* S.G. § 12-105 ("State personnel shall have the immunity from liability described under § 5–522(b) of the Courts and Judicial Proceedings Article.").

Moreover, at the relevant time, S.G. § 12-104 stated, in part (italics in original):[13]

(a) *In general.* — (1) Subject to the exclusions and limitations in this subtitle and notwithstanding any other provision of law, the immunity of the State and of its units is waived as to a tort action, in a court of the State, to the extent provided under paragraph (2) of this subsection.
>     (2) The liability of the State and its units may not exceed $400,000 to a
>     single claimant for injuries arising from a single incident or occurrence.
(b) *Exclusions and limitations.* — Immunity is not waived under this section as described under § 5-522(a) of the Courts and Judicial Proceedings Article.

C.J. § 5-522(a)(4) is also pertinent.  It states: "Immunity of the State is not waived . . . for . . . Any tortious act or omission of State personnel that: (i) Is not within the scope of the public duties of the State personnel; or (ii) Is made with malice or gross negligence[.]"  And, C.J. § 5-522(b) is relevant as well.  It states, in part: "State personnel . . . are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope

---

[13] In 2021, the Maryland General Assembly amended S.G. § 12-104, effective July 1, 2022. *See* 2021 Md. Laws, Ch. 59.

of the public duties of the State personnel and is made without malice or gross negligence. . . ." *See also Cooper v. Rodriguez*, 443 Md. 680, 707, 118 A.3d 829, 845 (2015).

"The Court of Appeals of Maryland has observed that, when read in tandem, [S.G. § 12-104 and C.J. § 5-522] establish that the tort 'liability of the State and [the tort] liability of individual State personnel are mutually exclusive. If the State is liable, the individual is immune; if the individual is liable, the State is immune.'" *Marks v. Dann*, DKC-13-0347, 2013 WL 8292331, at *7 (D. Md. July 24, 2013) (alteration in *Marks*) (quoting *Newell*, 407 Md. at 635, 967 A.2d at 763).

The "MTCA does not distinguish between constitutional torts and common law torts. Accordingly, the same standards of malice and gross negligence govern" State common law tort claims and violations of State constitutional rights. *Newell*, 407 Md. at 640 n.28, 967 A.2d at 766 n.28. Moreover, statutory immunity under the MTCA, discussed *infra*, applies to both negligent and intentional torts. *See Lee v. Cline*, 384 Md. 245, 266, 863 A.2d 297, 310 (2004); *see also Espina v. Jackson*, 442 Md. 311, 325, 112 A.3d 442, 450 (2015).[14]

### b. Statutory Immunity

As noted, the MTCA provides that State personnel are immune from suit for any "tortious act or omission that is within the scope of the public duties of the [official] and is made without malice or gross negligence, and for which the State [has] waived immunity." C.J. § 5-522(b). In that circumstance, the MTCA "substitutes the liability of the State for the liability of the state employee." *Lee*, 384 Md. at 262, 863 A.2d at 307. "And in a precisely complementary provision, the MTCA waives the state's immunity for tort actions brought in state court except where a

---

[14] Statutory immunity under the MTCA is distinct from Maryland's common law doctrine of public official immunity, which "is generally applicable only in negligence actions or defamation actions based on allegedly negligent conduct." *Lee*, 384 Md. at 258, 863 A.2d at 305.

tortious act or omission by state personnel is outside the scope of their public duties or made with malice or gross negligence." *Marks v. Dann*, 600 F. App'x 81, 85 (4th Cir. 2015) (citing C.J. § 5–522(a)).

"At issue in MTCA cases like this one, in other words, is not whether a person injured by tortious state action . . . will have any remedy, but whether that remedy will lie against a state official in his or her personal capacity or against the state itself." *Marks*, 600 F. App'x at 85. If State personnel defendants are entitled to statutory immunity, any claims against them are instead asserted against the State itself. If, however, the State personnel are not entitled to immunity under the statute, then the State is immune from liability for their conduct.[15]

"[S]tate personnel are not immune from suit and liability in tort when the plaintiff's complaint *sufficiently* alleges malice or gross negligence." *Barbre*, 402 Md. at 181–82, 935 A.2d at 714 (emphasis in original). Thus, compliance with the MTCA's notice requirement is not necessary in a suit against individual State personnel in which it is sufficiently alleged that the defendants acted with malice or gross negligence. *Id.*; *see also, e.g.*, *Taylor*, 2016 WL 3906641, at *5. Indeed, "[t]he MTCA's requirements have no effect . . . on a plaintiff's claims against individual state employees." *Canter v. Schoppert*, GJH-16-2545, 2020 WL 1150774, at *9 (D. Md. Mar. 6, 2020).

But, to "get past" a state official's immunity defense, a plaintiff "must point to specific facts that raise an inference that [the official's] actions were improperly motivated." *Nero v. Mosby*, 890 F.3d 106, 128 (4th Cir. 2018). Even at the motion to dismiss stage, "'the plaintiff must allege with some clarity and precision those facts which make the act malicious.'" *Manders*

---

[15] And, as noted, this applies equally to violations of the Maryland Constitution. *See Lee*, 384 Md. at 266, 863 A.2d at 310.

44

*v. Brown*, 101 Md. App. 191, 216, 643 A.2d 931, 943 (1994) (quoting *Elliot v. Kupferman*, 58 Md. App. 510, 526, 473 A.2d 960, 969 (1984)).

Therefore, I shall assess whether the Amended Complaint sufficiently alleges malice or gross negligence as to each of the individual defendants in order to determine if the claims may be brought against them personally, or if instead the claims must be brought against the State. As discussed, if the individual defendants are shielded by statutory immunity, the claims must instead be lodged against the State.

For purposes of MTCA immunity, "malice" refers to so-called "actual malice," *i.e.*, "conduct 'characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud.'" *Lee*, 384 Md. at 268, 863 A.2d at 311 (citation omitted). "To establish malice, a plaintiff must show that the government official 'intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff.'" *Nero*, 890 F.3d at 127 (quoting *Bord v. Balt. Cnty.*, 220 Md. App. 529, 557, 104 A.3d 948, 964 (2014)).

Gross negligence means "'an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them.'" *Newell*, 407 Md. at 638, 967 A.2d at 764 (citation and internal footnote omitted); *see also Cooper*, 443 Md. at 686, 118 A.3d at 832–33. Put another way, an act is the product of gross negligence when it is committed by one who is "'utterly indifferent to the rights of others [such] that he acts as if such rights did not exist.'" *Newell*, 407 Md. at 638, 967 A.2d at 764–65 (citation omitted).

The Maryland Court of Appeals "has recognized consistently that the determination of whether a State actor enjoys State personnel immunity is a question for the trier of fact." *Newell*,

407 Md. at 636, 976 A.2d at 763; *see Cooper*, 443 Md. at 709, 118 A.3d at 846; *Taylor v. Harford*

*Cnty. Dep't of Soc. Servs.*, 384 Md. 213, 229, 862 A.2d 1026, 1034 (2004) (citation and internal

quotation marks omitted) ("Ordinarily, unless the facts are so clear as to permit a conclusion as a

matter of law, it is for the trier of fact to determine whether a defendant's negligent conduct

amounts to gross negligence."); *Romanesk v. Rose*, 248 Md. 420, 423, 237 A.2d 12, 14 (1968)

(citations omitted) ("Whether or not gross negligence exists necessarily depends on the facts and

circumstances in each case" and "is usually a question for the jury and is a question of law only

when reasonable [people] could not differ as to the rational conclusion to be reached.").

In sum, as "state personnel," the individually named defendants are entitled to statutory

immunity for any alleged tortious acts or omissions committed within the scope of their public

duties, absent malice or gross negligence. *See* C.J. § 5-522(b); *see also* S.G. § 12-101 (defining

"state personnel" to include State employees paid by the Office of the Comptroller); *see also*

*Cooper*, 443 Md. at 727,118 A.3d at 857 ("[A] correctional officer employed by the Division of

Correction of the Maryland DPSCS[] is a State employee for purposes of the MTCA and also a

public official for purposes of common law public official immunity.").[16]   Although plaintiff

alleges that all defendants "acted knowingly, maliciously, and with reckless and callous disregard

for Plaintiff's rights," ECF 12, ¶ 14, this is not sufficient to assert malice or gross negligence for

the purposes of MTCA immunity.

As noted, to overcome statutory immunity, a plaintiff "must point to *specific facts* that raise

an inference that [the official's] actions were improperly motivated," *Nero*, 890 F.3d at 128

(emphasis added), and the "facts which make the act malicious" must be alleged "with some clarity

---

[16] There has been no reason presented why the individual defendants are not State
employees or should not qualify as "state personnel."

and precision." *Elliot*, 58 Md. App. at 526, 473 A.2d at 969.  Moreover, "defendants are not fungible; [the Court] must examine what each is charged with doing or failing to do." *Wells v. State*, 100 Md. App. 693, 703, 642 A.2d 879, 884 (1994); *cf. Langford*, 2023 WL 2335957, at *2 ("The complaint makes only collective allegations against all 'Defendants,' without identifying how each individual Defendant personally interacted with [plaintiff] or was responsible for the denial of his Eighth Amendment rights.").  Put another way, as to each defendant, a plaintiff "must have pled *facts* showing that [a defendant] acted with a wanton and reckless disregard for others" for the challenged conduct. *Boyer v. State*, 323 Md. 558, 579, 594 A.2d 121, 132 (1991) (emphasis in original).

Plaintiff bases his claims on the allegation that defendants "were aware that the shower on or at tier Unit 6B was a dangerous area and presented a danger for inmates, such that the area needed to be manned and staffed at all times."  ECF 12, ¶ 27.  Although plaintiff asserts that defendants "were on notice" of the danger presented by the area because "inmates had been assaulted and injured while showering in the area previously and prior to the assault" on plaintiff, he does not specify which defendants had such knowledge of prior assault, or the basis for such knowledge. *See Langford*, 2023 Wl 2335957, at *2.   A plaintiff must assert facts to support a contention, and "somewhat vague allegations" do not support a conclusion that a defendant acted with gross negligence. *Boyer*, 323 Md. at 579, 594 A.2d at 132.

Here, to illustrate, plaintiff alleges, ECF 12, ¶ 55:

> Defendants and their agents, servants and/or employees acted improperly and/or acted willfully, knowingly and purposefully with specific intent, to deprive Mr. Jordan of the rights, privileges and immunities secured to him by the Constitution of the State of Maryland, including but not limited to the following: Freedom from illegal detention or imprisonment; freedom from the use of excessive or unreasonable force; freedom from physical abuse, coercion and intimidation; the right to due process; and the right to life, the right to liberty.

Again, "defendants are not fungible," and the allegations do not clarify "what each is

charged with doing or failing to do." *Wells*, 100 Md. App. at 793m 642 A.2d at 884.  Therefore, the Amended Complaint fails to assert malice or gross negligence as against any defendant.

Thus, I shall dismiss Counts 3 through 7. However, some of the deficiencies could be cured through an appropriate pleading.  Therefore, dismissal shall be without prejudice and with leave to amend.

### III. Conclusion

In sum, the Amended Complaint fails to state a claim against defendants under federal and State law due to the absence of allegations as to their personal involvement in the Incident.  And, the State law claims are subject to dismissal for failure to attach proof that plaintiff exhausted his administrative remedies, pursuant to the MPLA.

To the extent that Counts 1 and 2 are against defendants in their official capacities, I shall grant the Motion (ECF 13), and dismiss those claims, with prejudice.  All other claims in the Amended Complaint (ECF 12) are dismissed without prejudice, and with leave to file a second amended complaint, due within 21 days of the date of docketing of this Memorandum Opinion and the accompanying Order.  If plaintiff does not file a second amended complaint within 21 days of the date of docketing of this Memorandum Opinion and the accompanying Order, I shall direct

the Clerk to close the case.[17]

      An Order follows, consistent with this Memorandum Opinion.

Date: March 13, 2023

                                        /s/_____

                                Ellen L. Hollander
                                United States District Judge

---

[17] If plaintiff seeks to pursue his State law claims in State Court, he is advised that, under 28 U.S.C. § 1367(d), State law claims brought in federal "shall be tolled" while the claims are pending. The claims are tolled for a period of 30 days after dismissal. In *Turner v. Kight*, 406 Md. 167, 189, 957 A.3d 984, 997–98, 957 A.2d 984 (2008), the Maryland Court of Appeals observed that § 1367(d) "serves to suspend the running of a State statute of limitations from the time the State-law claim is filed in U.S. District Court until 30 days after (1) a final judgment is entered by the U.S. District Court dismissing the pendant State-law claims, or (2) if an appeal is noted from that judgment, issuance of an order of the U.S. Court of Appeals dismissing the appeal or a mandate affirming the dismissal of those claims by the District Court."