IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WAYNE JORDAN,

    *Plaintiff,*

    v.                            Civil No. ELH-22-1541

STATE OF MARYLAND, et al.,

    *Defendants*.

**MEMORANDUM OPINION**

Plaintiff Wayne Jordan, a Maryland prisoner, filed suit, through counsel, against the State of Maryland (the "State"), the Maryland Department of Public Safety and Correctional Services ("DPSCS"), and several DPSCS officers and officials:  Robert L. Green, the former Secretary of DPSCS; O. Wayne Hill, the former Commissioner of the DPSCS Division of Corrections; Walter West, the Warden of the Eastern Correctional Institute ("ECI") in Westover, Maryland; Tyrone Bowman, a former DPSCS correctional officer; and Takiya Barkley, a DPSCS correctional officer. ECF 35 ("Third Amended Complaint").

The suit is rooted in an incident of January 10, 2019, when Jordan was struck in the face by another inmate while in a shower at ECI.  *Id.* ¶¶ 1, 22.  Plaintiff claims that defendants violated the Eighth Amendment to the Constitution and various provisions of State law by failing to protect him from the attack and by failing to provide appropriate medical care in connection with the assault. *Id.* ¶¶ 40–91.

The State, DPSCS, Green, Hill, West, and Bowman have moved to dismiss the Third Amended Complaint.  ECF 39.  The motion is supported by a memorandum (ECF 39-2) and an

exhibit (ECF 39-4).[1]  Barkley filed a separate motion to dismiss.  ECF 42.  It consists of a single paragraph that "adopt[s] and incorporate[s] . . . by reference" the content of the motion of the codefendants, "as if specifically alleged by" Barkley.  *Id.* at 1.  I shall refer to the motions (ECF 39, ECF 42) collectively as the "Motion to Dismiss" or "Motion."  Plaintiff opposes the Motion.  ECF 50.  Defendants have not replied.  *See* Docket.

No hearing is necessary to decide the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Motion, in part.  In particular, I shall dismiss Counts 1 and 2 of the Third Amended Complaint.  And, I shall remand the remaining claims, which arise under Maryland law, to the Circuit Court for Baltimore City, where the case was initially filed.

## I.       Procedural Background

Jordan filed suit in the Circuit Court for Baltimore City on March 22, 2022.  *See* ECF 2 ("Complaint").  Defendants DPSCS, Green, Hill, and Davis timely removed the case to federal court on June 22, 2022, pursuant to 28 U.S.C. §§ 1331, 1343, and 1441(a).  ECF 1 ("Notice of Removal"), ¶ 5.  Jordan has since amended the suit three times.  *See* ECF 12 ("First Amended Complaint"); ECF 27 ("Second Amended Complaint"); ECF 35 ("Third Amended Complaint").  The Third Amended Complaint is the operative pleading.

The Complaint (ECF 2) named nine defendants: DPSCS; Bowman; Green; Hill; West; Dereck E. Davis, the "State Treasurer"; Jama Acuff, former warden of Maryland Correctional Institution Jessup ("MCIJ"); Denise Gelsinger, former warden of Maryland Correctional Institution Hagerstown ("MCIH"); and Jeffrey Nines, warden of North Branch Correctional

---

[1]  The table of contents to the memorandum is filed at ECF 39-1.  The proposed order accompanying the memorandum is filed at ECF 39-3.

Institution. *Id.* at 1; *id.* ¶¶ 1–11.[2]   The Complaint also named "several unknown correctional officers." ECF 2 at 2 (typeface altered).   In the Complaint, Jordan alleged two violations of the federal Constitution, pursuant to 42 U.S.C. § 1983: "Subjecting Plaintiff to Serious Harm and a Substantial Risk of Serious Harm in Violation of the Eighth Amendment" (Count 1), *id.* ¶¶ 33–38, and "Constitutional Denial of Due Process in Failing to Train and or Supervise" (Count 2). *Id.* ¶¶ 39–47.   He also asserted various claims arising under Maryland law: violations of the Maryland Declaration of Rights (Count 3, Count 4), *id.* ¶¶ 48–62; "Vicarious Liability" (Count 5), *id.* ¶¶ 63–68; negligence (Count 6), *id.* ¶¶ 69–74; and gross negligence (Count 7). *Id.* ¶¶ 75–80.

On July 20, 2022, before any defendant had responded to the suit, plaintiff filed the First Amended Complaint. ECF 12.   The First Amended Complaint named eleven defendants: DPSCS; Bowman; Barkley; Davis; Green; Hill; West; J. Thomas Wolfe, "Acting Warden of Jessup Correctional Institution"; Carlos Bivens, warden of Roxbury Correctional Institution; Ronald Shane Weber, warden of Western Correctional Institution; and William Bohrer, warden of Maryland Correctional Training Center. *Id.* at 1–2, ¶¶ 3–12.[3]   The First Amended Complaint also named "several unknown correctional officers." *Id.* at 2.   And, it asserted the same claims contained in the Complaint. *See id.* ¶¶ 34–81.

Wolfe, West, Bivens, Weber, Bohrer, Bowman, and Barkley were not served. *See* Docket; *see also* ECF 13-2 at 15 n.9; Fed. R. Civ. P. 4(m) (allowing 90 days for service, unless good cause is shown).   Davis, DPSCS, Green, and Hill—the only defendants who were served—moved to

---

[2] Green is no longer the Secretary of DPSCS; Acuff is no longer the warden at MCIJ; and Gelsinger is no longer the warden at MCIH. Hill is now the Deputy Secretary of Operations of DPSCS. *Department of Public Safety & Correctional Services*, Md. Manual On-Line, https://perma.cc/H64K-T3JU (last visited July 9, 2024).

[3] Wolfe is no longer the Acting Warden of JCI. *See Department of Public Safety & Correctional Services*, *supra*, https://perma.cc/H64K-T3JU.

dismiss the First Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6).  ECF 13 ("First Motion to Dismiss").  By Memorandum Opinion (ECF 25) and Order (ECF 26) of March 13, 2023, I granted the First Motion to Dismiss.  In particular, I dismissed, with prejudice, Count 1 and Count 2 of the First Amended Complaint, insofar as those counts were asserted against defendants in their official capacity.  *See* ECF 26.  And, I dismissed the remainder of the First Amended Complaint without prejudice, and with leave to amend.  *Id.*

Plaintiff filed a Second Amended Complaint (ECF 27) on April 3, 2023, supported by two exhibits.  ECF 27-1; ECF 27-2.  In addition to the defendants named in the First Amended Complaint, the Second Amended Complaint added Carolyn J. Scruggs and Cleveland C. Friday as defendants.  ECF 27 at 1.[4]  Although the amended suit included Scruggs and Friday in the case caption, it did not otherwise mention them.  *See id.*  The Second Amended Complaint asserted the same seven counts that had been asserted in the previous pleadings.  *See id.* ¶¶ 35–85.

On June 30, 2023, before any defendant responded to the Second Amended Complaint, plaintiff filed the Third Amended Complaint.  ECF 35.  There, Jordan added the "State of Maryland" as a defendant, but removed Davis, Weber, Wolfe, Bivens, Bohrer, Scruggs, and Friday from the suit.  *See* ECF 35-3 at 1–2.  The reference to the "unknown correctional officers" was also omitted.  *Id.* at 2 (typeface altered).  As indicated, the defendants named in the Third Amended Complaint are the State, DPSCS, Green, Hill, West, Bowman, and Barkley.  ECF 35 at 1.

The suit contains seven counts, as follows:  "42 U.S. Code § 1983—Subjecting Plaintiff to Serious Harm and a Substantial Risk of Serious Harm in violation of the Eighth Amendment," asserted against Green, Hill, West, Bowman, and Barkley (Count 1);  "42 U.S. Code § 1983—Supervisory Liability for Failure to Take Reasonable Measures to Guarantee Plaintiff's Health and

---

[4] Plaintiff does not specify the occupations of Scruggs or Friday.  *See* ECF 27.

Safety, to Protect Him from Attack, and to Render Assistance," asserted against Green, Hill, West, and Barkley (Count 2); "Violations of Maryland Declaration of Rights/State Constitutional Claim," asserted against the State, DPSCS, Green, Hill, West, Bowman, and Barkley (Count 3); "Violations of Articles 16 and 25 of the Maryland Declaration of Rights," asserted against the State, DPSCS, Green, Hill, West, Bowman, and Barkley (Count 4); "Vicarious Liability," asserted against the State, DPSCS, Green, Hill, West, and Barkley (Count 5); negligence, asserted against all defendants (Count 6); and gross negligence, asserted against Green, Hill, West, Bowman, and Barkley (Count 7).

## II.     Factual Background[5]

Plaintiff is "an inmate in the DPSCS."  ECF 35, ¶ 21.  As noted, his claims arise out of an incident that occurred on January 10, 2019, in a shower at ECI.  *Id.* ¶ 22.  Specifically, plaintiff alleges, *id.*:

> On or about January 10, 2019, Mr. Jordan was taking a shower on the honor tier, Unit 6-B, at ECI when he was struck in the eye by an unprovoked inmate subsequently revealed to be Al Bell with a weapon or foreign object. During the shower and during or before the assault, Mr. Bell made a comment to Mr. Jordan to the effect that Jordan was not supposed to use the shower during the Muslim gang's shower time. This left Mr. Jordan disoriented in a white-out or immobilized state for some time, at least several minutes if not more. He could not immediately discern what had happened, and found himself with blood on his floor and his toilet.

Plaintiff refers to an "Application for Statement of Charges" against Bell for his assault of plaintiff.  *Id.* ¶ 28; *see also* ECF 35-2 ("Charge Application").  The Charge Application states, ECF 35-2 at 4:

> On January 10, 2019, at approximately 1250 hours, at the Eastern Correctional Institution, Inmate Al Bell struck inmate Wayne Jordan in his face

---

[5] As discussed, *infra*, given the posture of the case, I must assume the truth of plaintiff's factual allegations.

with his fist[6] as they were showering in adjacent stalls in the HU6B-tier dayroom. Inmate Jordan was sent out 911 to the Peninsula Regional Medical Center where he was treated for an open wound to the eyeball.  A review of the video camera clearly shows Inmate Bell looking around and then suddenly striking Inmate Jordan in his face with his right fist.

Plaintiff states that Bell "was subsequently convicted of Second-Degree Assault for his assault on the Plaintiff, and sentenced to three years incarceration."  ECF 35, ¶ 32.

According to plaintiff, at the time of the assault, Officer Bowman was assigned to "monitor the shower area and video feed . . . ."  *Id.* ¶ 31.  Sergeant Barkley, Bowman's supervisor, was assigned to "supervise[] and monitor[]" the shower area  "via video feed." *Id.* ¶ 23.   But, plaintiff alleges that "[t]here was no staff member or officer in the area or on post when this incident happened."  *Id.*  Instead, Bowman and Barkley "were in the control center or on another post and not monitoring the shower area in person or via video as they were assigned to do."  *Id.*  According to plaintiff, Bowman and Barkley were "involved in an intimate or romantic relationship."  *Id.* ¶ 31.  And, plaintiff contends that it was "well known among the inmates and staff" that, during their shifts, Bowman and Barkley "engag[ed] in amorous activities" instead of performing their assigned duties.  *Id.*; *see id.* ¶ 54.

Before Bell struck plaintiff, he was able to "look[] around and . . . confirm[] that no official was" near.  *Id.* ¶ 23   Moreover, after Bell struck plaintiff, "no staff member or officer responded . . . to address [plaintiff's] assailant and or render him aid . . . ."  *Id.*

Plaintiff alleges that the officers' failure to supervise the shower area "direct[ly] violat[ed] . . . DPSCS regulations that require all posts to be staffed, and that prohibit DPSCS employees from leaving his/her assigned post . . . unless properly and officially relieved . . . ."  *Id.* (citing

---

    6 Although the Charge Application states that Bell struck Jordan in the face with his fist, ECF 35-2 at 4, plaintiff maintains that Bell struck him with a weapon.  ECF 35, ¶ 28 n.2.

DPSCS Standards of Conduct & Internal Administrative Disciplinary Process DCD50-2) ("DPSCS Conduct Standards" or "Conduct Standards").

According to plaintiff, the "physical location and configuration of the shower" make it difficult for officers to observe what is going on in the shower area and shower stalls. *Id.* ¶ 25. Plaintiff alleges that, as a result of this configuration and past failures by officers to intervene, "numerous inmates [had] been assaulted and injured while showering . . . ." *Id.* And, plaintiff asserts that Hill, Green, West, Barkley, and Bowman had become aware of the danger of the shower area from "regulations that require that officers remain at their posts until relieved" and reports of "violent incidents that occurred at the facility." *Id.* In addition, plaintiff asserts that West, Barkley, and Bowman had "personal knowledge" of past assaults in the shower area, because they "personally respond[ed] to some of the assaults . . . or to . . . the inmate area after the assaults had taken place." *Id.* ¶ 26.

In sum, with respect to defendants' knowledge of the danger posed by the shower area, plaintiff alleges, *id.*:

> [T]he afore-mentioned [sic] defendants, staff members and officers and prison management officials were on notice that this area was dangerous, that inmates could be and had been injured while showering there, and that staff and officers were needed to monitor the area and to be present on the scene to prevent and minimize the injuries and risks of injury and assaults that occurred there, and to be able to provide a quick response to any inmate who was in fact injured as a result of an assault in that area, such that their failure to do so further evidences their deliberate indifference to the high likelihood that Plaintiff and other inmates could be and have been harmed in the shower area.

Plaintiff also asserts that DPSCS personnel, including Green, Hill, West, Bowman, and Barkley, were aware that Bell in particular posed a danger to other inmates. *Id.* ¶ 28. According to plaintiff, Bell was "argumentative and confrontational with other inmates," was incarcerated "for rape," and "had a prior record that included assault." *Id.* ¶ 28. Plaintiff contends that Green,

Hill, West, Bowman, and Barkley "would have or should have known of" Bell's reputation for violence. *Id.* Therefore, plaintiff asserts that defendants "were on notice that they needed to monitor the shower area more closely when Bell was there." *Id.*

In addition, plaintiff contends that Bell was reputed to be a "member of the Sunni Muslims, a violent gang," *id.* ¶ 29, that "control[s], or at least attempt[s] to control[,] the showers . . . through intimidation and violence toward other inmates." *Id.* ¶ 30. And, plaintiff asserts that Green, Hill, West, Bowman, and Barkley were aware "that non-gang members . . . are subject to increased amounts of violence and conflicts if they use the showers during the time [that Bell's] gang perceives as gang shower time." *Id.* Plaintiff states that he is "is a non-Muslim and is not in any gang . . . ." *Id.*

Further, plaintiff contends that he sustained numerous injuries as a result of the assault. *Id.* ¶ 33. In particular, plaintiff "suffered multiple facial fractures and severe damage to his right eye," which resulted in loss of sight in the eye. *Id.* Plaintiff's injuries caused him to be hospitalized for one week and "confined to the prison infirmary for approximately 3–4 weeks . . . ." *Id.* In addition, plaintiff alleges that, as a result of the assault, he "lost the job that he held in the ECI at the time," as well as "his status on the honor tier." *Id.*

With respect to Jordan's medical treatment, he does not seem to complain about the quality of the care he received. Rather, he complains that defendants have failed to assure that he is referred for needed medical care and have also failed to follow or implement the recommendations of the medical care providers who have treated plaintiff.

According to plaintiff, the medical treatment he has received from DPSCS since the assault "has been inconsistent," even though plaintiff has requested "appropriate medical treatment for his injuries." *Id.* ¶ 34. In particular, plaintiff alleges that he has not received the following, *id.*: "the

proper medical attention, appointments, specialists, drops, eye patches and other medical devices as recommended by doctors"; "sufficient and recommended specialized care and treatment for his damaged eye and or for related damage to his related facial structures and remaining eye"; "medically recommended sonograms pursuant to the schedule outlined by doctors"; and "appropriate treatment" for his facial fractures, which have "worsened" as a result of his lack of adequate care.  Jordan also alleges he has suffered "humiliation, disruption of his relationships with his loved ones, severe anxiety[,] and emotional distress."  *Id.* ¶ 46.

Jordan contends that all defendants were aware of his injuries "as well as the fact that his condition continued to worsen as a result of the lack of proper treatment and medical attention."  *Id.* ¶ 34.  According to plaintiff, documentation reflecting this information is "stored, available and viewed and discussed by them."  *Id.*  Jordan also alleges that West, Hill, and Green know of the incident, medical problems, and inadequate medical care, because they have received the "grievances" filed by plaintiff.  *Id.*

On January 21, 2019, Jordan "filed a Maryland Division of Correction Request for Administrative Remedy."  *Id.* ¶ 14 (citing ECF 35-1 at 1–4).  The request was "dismissed on January 22, 2019 for procedural reasons."  ECF 35, ¶ 14.  Thereafter, on February 16, 2019, Jordan "filed a Maryland Division of Correction Headquarters Appeal of Administrative Remedy Response."  ECF 35, ¶ 15; *see* ECF 35-1 at 5–6.  The appeal was also "dismissed for procedural reasons."  ECF 35, ¶ 15.  Jordan filed a second appeal on March 21, 2019.  *Id.* ¶ 17 (citing ECF 35-1 at 9).  On May 15, 2019, the second appeal "was dismissed by . . . DPSCS."  ECF 35, ¶ 18; (citing ECF 35-1 at 10).

On February 20, 2019, "Jordan served the State of Maryland through its Treasurer, Nancy K. Koop [sic] with his Notice . . . under the Maryland Tort Claims Act."  ECF 35, ¶ 16; *see* ECF

35-1 at 7).  "The Notice was received and acknowledged by the Treasurer's Office on February 28, 2019."  ECF 35, ¶ 16 (citing ECF 35-1 at 8).

According to plaintiff, an encounter between plaintiff and an unidentified guard that occurred on April 19, 2019—several months after the assault in the shower area—confirms that the individual defendants "purposefully and maliciously allowed him to be injured . . . in conspiracy against him and in retaliation towards him for their perception that he is difficult or argumentative and because of various grievances he had filed before the shower incident."  ECF 35, ¶ 35.  The encounter occurred when plaintiff was meeting with his counsel, and plaintiff's counsel sought to give plaintiff his business card.  *Id.*  The guard informed plaintiff that he could not receive the business card.  *Id.*  Plaintiff then informed the guard that he believed that "business cards were not prohibited."  *Id.*  Thereafter, the guard "stated words to the effect of 'Now your attorney will see how you really are, and she will see why your eye is like that,' or 'that's why your eye is like that.'"  *Id.*  According to plaintiff, all defendants are aware of this incident because plaintiff's counsel "wrote a letter to the ECI Assistant Warden Walter Holmes describing the encounter, and received a response from Defendant West which also described and referenced the encounter."  *Id.*  In addition, plaintiff states that he filed a grievance regarding this encounter, which "would be kept and reviewed" by all defendants pursuant to the prison's "ordinary procedures."  *Id.*

### III.   Legal Standards

#### A.   Rule 12(b)(6)

As noted, defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(6).  *See* ECF 39; ECF 42.

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6)*. Nadendla v. WakeMed*, 24 F.4th 299, 304–05 (4th Cir. 2022); *Fessler v. Int'l Bus. Machs. Corp.*, 959 F.3d 146, 152 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

The "court's role under Rule 12(b)(6) is to evaluate the sufficiency of a complaint . . . ." *Doriety v. Sletten*, ___ F.4th ___, 2024 WL 3558754, at *6 (4th Cir. July 29, 2024). Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325–26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). It provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570*; see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); *see also Fauconier v. Clarke*, 966 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan*, 918 F.3d at

317–18; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

A plaintiff need not include "detailed factual allegations" to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam). However, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Instead, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts]

in favor of the plaintiff.'"  *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020); *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015).  However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cnty.*, 628 F.3d 140, 146 (4th Cir. 2010).

"A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought.  *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).  But, "[m]ere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion.  *Morrow v. Navy Federal Credit Union*, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022).

When ruling on a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"  *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023); *Bing v. Brio Sys.*, LLC, 959 F.3d 605, 616 (4th Cir. 2020).  But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009).  Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg &*

*Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*' " *Goodman*, 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst*, 4 F.3d at 250); *see L.N.P. v. Kijakazi*, 64 F.4th 577, 585–86 (4th Cir. 2023).

It is well settled that a plaintiff may not cure a defect in a complaint or otherwise amend a complaint by way of opposition briefing. *See, e.g., De Simone v. VSL Pharmaceuticals*, 36 F.4th 518, 531 (4th Cir. 2022) (recognizing that, generally, new arguments cannot be raised in a reply brief); *Henderson v. City of Roanoke*, 2022 WL 704351, at *3 (4th Cir. Mar. 9, 2022) (per curiam) ("[N]o litigant is exempt from the well-established rule 'that parties cannot amend their complaints through briefing or oral advocacy.'") (quoting *So. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013)); *Glenn v. Wells Fargo Bank, N.A.*, DKC-15-3058, 2016 WL 3570274, at *3 (D. Md. July 1, 2016) (declining to consider declaration attached to brief opposing motion to dismiss because, among other things, it included allegations not included in the suit); *Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998).

As noted, plaintiff has appended two exhibits to the Third Amended Complaint. *See* ECF 35-1; ECF 35-2. One exhibit consists of various documents pertaining to plaintiff's request for administrative relief from DPSCS. ECF 35-1. The other exhibit contains the Charge Application. ECF 35-2. In addition, in support of the Motion, defendants have filed a copy of the DPSCS Conduct Standards. *See* ECF 39-4.

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the

'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448); *see Goines*, 822 F.3d at 166 (a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits"); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

And, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Doriety*, 2024 WL 3558754, at *6; *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied sub nom.*, *City of Greensboro v. BNT Ad Agency, LLC*, 583 U.S. 1044 (2017); *Kensington Volunteer Fire Dep't v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012).

To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)) (emphasis in original) (citation omitted); *see also Brentzel v. Fairfax Transfer and Storage, Inc.*, 2021 WL 6138286, at

*2 (4th Cir. Dec. 29, 2021) (per curiam); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may only take judicial notice of adjudicative facts if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

In my review of the sufficiency of the allegations, I am entitled to consider the materials filed by plaintiff at ECF 35-1 and ECF 35-2, because they are "explicitly incorporated into the complaint by reference and" have been "attached to the complaint as exhibits." *Zak*, 780 F.3d at 606 (citation and internal quotation marks omitted); *see* ECF 35, ¶ 14 (referencing ECF 35-1); ECF 35, ¶ 28 (referencing ECF 35-2). Moreover, I am entitled to consider the copy of the DPSCS Conduct Standards (ECF 39-4) submitted by defendants in support of the Motion, because plaintiff references and characterizes the content of the Conduct Standards in the Third Amended Complaint. ECF 35, ¶ 23.

## B. Section 1983

Jordan asserts Counts 1 and 2 of the Third Amended Complaint pursuant to 42 U.S.C. § 1983. *See* ECF 35, ¶¶ 40–57.

Section 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).  Under § 1983, a plaintiff may file suit against any person who, acting under the color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 575 U.S. 983 (2015).

However, § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017).  In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey*, 526 U.S. at 707.

To state a claim under § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019); *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159–60 (4th Cir. 1997).  "The first step in any such claim is to pinpoint the specific right that has been infringed." *Safar*, 859 F.3d at 245.

The phrase "under color of state law" is an element that "'is synonymous with the more familiar state-action requirement' for Fourteenth Amendment claims, 'and the analysis for each is

identical.'" *Davison*, 912 F.3d at 679 (quoting *Philips*, 572 F.3d at 180); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982). A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk Cnty. v. Dodson*, 454 U.S. 312, 317–18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326, (1941)); *see also Philips*, 572 F.3d at 181 (citations and internal quotation marks omitted) ("[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient.").

The doctrine of respondeat superior does not apply in § 1983 cases. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Indeed, "'[i]n a § 1983 suit . . . each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.'" *Younger v. Crowder*, 79 F.4th 373, 381 n.12 (4th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 677) (alteration in *Younger*). If a plaintiff has not alleged any personal connection between a defendant and a denial of constitutional rights, the claim against that defendant must fail. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977); *see also Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) (same); *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (same).

But, "'supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates.'" *Johnson v. Robinette*, 105 F.4th 99, 123 (4th Cir. 2024) (quoting *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994), *cert. denied*, 513 U.S. 813 (1994)); *see Green v. Beck*, 539 F. App'x 78, 80 (4th Cir. 2013) (per curiam) ("A supervisor can only be held liable for the failings of a subordinate under certain narrow circumstances."). Liability for supervisory officials "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative

18

factor in the constitutional injuries they inflict on those committed to their care.'"  *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)); *see Campbell v. Florian*, 972 F.3d 385, 398 (4th Cir. 2020); *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014).  This requires a plaintiff to allege, *Shaw*, 13 F.3d at 799 (citations omitted):

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

To qualify as "pervasive," the challenged conduct must be "widespread, or at least . . . used on several different occasions."  *Shaw*, 13 F.3d at 799.  Therefore, it is insufficient to point "to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence . . . nor can he reasonably be expected to guard against the deliberate [unlawful] acts of his properly trained employees when he has no basis upon which to anticipate the misconduct."  *Id.* (quoting *Slakan*, 737 F.2d at 373) (alteration inserted). However, a supervisor's "continued inaction in the face of documented widespread abuses . . . provides an independent basis" for § 1983 liability against that official for his deliberate indifference or acquiescence to "the constitutionally offensive conduct of his subordinates."  *Slakan*, 737 F.2d at 373; *see Shaw*, 13 F.3d at 799.

## IV.    Discussion

### A.  Count 1 ("Subjecting Plaintiff to Serious Harm and a Substantial Risk of Serious Harm in violation of the Eighth Amendment")

In Count 1 of the Third Amended Complaint, plaintiff asserts, pursuant to 42 U.S.C. § 1983, that Green, Hill, West, Bowman, and Barkley violated the Eighth Amendment by acting

with deliberate indifference to the risk that plaintiff would be attacked in the ECI shower area. ECF 35, ¶ 43.  In particular, plaintiff alleges that defendants acted with deliberate indifference by "fail[ing] to . . . ensure proper monitoring of th[e] shower area," despite knowing that the area "was dangerous," had been "the site of numerous previous violent incidents with other inmates," was "configur[ed]" in a way that created a "high possibility of . . . threats and altercations," and was a common site of "possessive and violent behavior [by] . . . gang members toward non-gang members such as Plaintiff." *Id.*  In addition, plaintiff suggests that defendants acted with deliberate indifference by "fail[ing] to promptly respond and render aid and assistance to [plaintiff] after he was injured" or "provide consistent appropriate medical treatment to him for the injuries he sustained . . . ." *Id.*

"The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  Among other things, "'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'"  *Farmer*, 511 U.S. at 833 (citations omitted).  Indeed, "[h]aving incarcerated persons with demonstrated proclivities for antisocial[,] criminal, and often violent, conduct, [and] having stripped [prisoners] of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Id.* (citations omitted and cleaned up) (alterations added).  Therefore, prison officials are obligated to take "'reasonable measures to guarantee the safety'" of the inmates in their custody. *Raynor*, 817 F.3d at 127 (quoting *Farmer*, 511 U.S. at 832).

Nevertheless, "not every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v.*

20

*Fields*, 789 F.3d 126, 133 (4th Cir. 2015).  In particular, "a prison official violates the Eighth Amendment only when two requirements are met." *Farmer*, 511 U.S. at 834.  Under the first element, which is "objective," "the prisoner must be exposed to 'a substantial risk of serious harm.'" *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Farmer*, 511 U.S. at 834). Under the second element, which is "subjective," the prison official "must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97–98 (citing *Farmer*, 511 U.S. at 837–38).  In other words, the prison official must have "acted with a sufficiently culpable state of mind." *Alexander v. Connor*, 105 F.4th 174, 182 (4th Cir. 2024) (citation and quotation marks omitted); *see Cartagena v. Lovell*, 103 F.4th 171, 181 (4th Cir. 2024).

The "objective" element in the two-part test for prison official liability "requires plaintiffs to demonstrate that 'the deprivation alleged [was], objectively, sufficiently serious.'" *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (quoting *Farmer*, 511 U.S. at 834) (additional citation and internal quotation marks omitted); *see Moskos v. Hardee*, 24 F.4th 289, 297 (4th Cir. 2022).  "To be 'sufficiently serious,' the deprivation must be 'extreme'—meaning that it [causes] 'a serious or significant physical or emotional injury resulting from the challenged conditions . . . .'" *Scinto*, 841 F.3d at 225 (quoting *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003)). And, in determining whether a risk is "substantial," a court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

To satisfy the "subjective" element, a plaintiff must show that the official acted with "'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834.  "'[D]eliberate indifference' is a *culpable mens rea* that requires proof that the prison official subjectively 'knew'

of the substantial risk of harm to a prisoner and 'consciously disregarded' it." *Ford v. Hooks*, ___ F.4th ___, 2024 WL 3260902, at *4 (4th Cir. July 2, 2024) (quoting *Farmer*, 511 U.S. at 837) (emphasis in *Ford*). To establish that an official acted with deliberate indifference, a "prisoner must show both (1) 'that the [prison] official in question subjectively recognized a substantial risk of harm' and (2) that the official also 'subjectively recognized' that any actions he took in response 'were inappropriate in light of that risk.'" *Ford*, 2024 WL 3260902, at *4 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (alteration in *Ford*); *see Cartagena*, 103 F.4th at 181 (citing *Farmer*, 511 U.S. at 839, and reiterating that "to show that a prison official was deliberately indifferent, the prisoner must show that the official '*consciously disregard[ed]* a substantial risk of serious harm' . . . .") (emphasis in *Cartagena*) (cleaned up).

Deliberate indifference "'lies somewhere between negligence and purpose or knowledge . . . .'" *Scinto*, 841 F.3d at 225 (citations and internal quotation marks omitted). In particular, deliberate indifference involves a greater degree of culpability than "'mere negligence.'" *Id.* (quoting *Farmer*, 511 U.S. at 835); *see Ford*, 2024 WL 3260902, at *4 ("It is not enough that the prison official *should have* recognized the risk and the inadequacy of his response."). Therefore, "Eighth Amendment liability requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835 (quoting *Whitley v. Albers*, 475 U.S. 312 (1986)). But, the deliberate indifference standard "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. As a result, the standard does not require that an official "inten[d] to cause the harm risked." *Anderson v. Kingsley*, 877 F.3d 539, 545 (4th Cir. 2017).

A prisoner need not produce direct evidence that an official had the mental state of deliberate indifference. *Farmer*, 511 U.S. at 842. Instead, an inmate can prove an official's actual

knowledge of a substantial risk "in the usual ways, including [by] inference from circumstantial evidence." *Id.*   In other words, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*; *see Makdessi*, 789 F.3d at 136 ("[T]he subjective 'actual knowledge' standard required to find deliberate indifference may be proven by circumstantial evidence that a risk was so obvious that it had to have been known.").

Defendants do not appear to dispute that "the deprivation alleged is . . . 'sufficiently serious,'" *Farmer*, 511 U.S. at 825, so as to satisfy the objective element of the *Farmer* test.   *See* ECF 39-2 at 13–16.  Instead, defendants argue that Count 1 is subject to dismissal because plaintiff has not alleged facts that, if true, would establish that any defendant had actual knowledge of a substantial risk that plaintiff would be attacked in the shower area, or that any defendant consciously disregarded such a risk.  *Id.*   Alternatively, defendants argue they are entitled to qualified immunity with respect to the claim asserted in Count 1.  *Id.* at 19–21.

## 1.  Sufficiency of Allegations

As noted, the "subjective" element of the *Farmer* test—which is the only element in dispute—requires a plaintiff to show "that the prison official subjectively 'knew' of [a] substantial risk of harm to a prisoner and 'consciously disregarded' it."  *Ford*, 2024 WL 3260902, at *4 (quoting *Farmer*, 511 U.S. at 837).

According to plaintiff, the individual defendants knew that the shower area posed a substantial risk of harm to plaintiff because (1) "it is the policy and practice of the ECI and the DPSCS to prepare reports and take photographs and create other documentation of the violent incidents that occurred at [ECI]," including those that occurred in the shower area, "and to present the documentation to managing officials including . . . Hill, Green, West, Barkley and Bowman for their review," *id.* ¶ 25; *see id.* ¶ 27; (2) the individual defendants were aware that, in response

to assaults in the shower area, "a video camera [had been] installed to assist the officers and staff to better monitor the shower area," *id.* ¶ 27; and (3) the individual defendants had reviewed incident reports and inmate grievance filings indicating that "the Sunni Muslim gang[]," of which plaintiff's assailant was a member, "control[s], or at least attempt[s] to control the showers and telephones through intimidation and violence toward other inmates." *Id.* ¶ 30; *see id.* ¶ 29.  In addition, plaintiff alleges that during his tenure at ECI, West, Barkley, and Bowman "had personally responded to the [shower] area as a result of serious assaults resulting in injuries . . . ." ECF 35, ¶ 27.[7]  Also relevant is plaintiff's allegation that the individual defendants' failure to monitor the shower area was "in direct violation of DPSCS regulations [*i.e.*, the DPSCS Conduct Standards] that require all posts to be staffed . . . ." *Id.* ¶ 23.

A prison official does not act with deliberate indifference by failing to protect inmates from "'the general risks that all . . . inmates pose[] to one another and prison officials.'" *King v. Riley*, 76 F.4th 259, 266 n.7 (4th Cir. 2023) (quoting *Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997)). Indeed, the Fourth Circuit has "explicitly rejected the idea that knowledge of a general risk of violence in a prison unit can establish deliberate indifference." *King*, 76 F.4th at 266 n.7.  In my view, plaintiff has failed to allege that the risk to which he was exposed in the shower area was any different from, or greater than, the risk of violence that exists generally in the prison environment.

First, plaintiff's allegation that the defendants were aware of certain unidentified "documentation and reports," ECF 35, ¶ 27, describing incidents of prison violence, is a "'naked assertion[]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

---

[7] Plaintiff does not allege that Green or Hill "personally responded" to previous assaults in the shower area.  ECF 35, ¶ 27.

550 U.S. at 557). Plaintiff's allegation, "upon information and belief," ECF 35, ¶ 27, that such reports were prepared and reviewed by the individual defendants is so conclusory and devoid of detail that it is "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. Even more conclusory is plaintiff's assertion about the *content* of the unidentified reports, namely, that the content of the reports demonstrated to the individual defendants that plaintiff was at particular risk of harm in the prison shower area. *See* ECF 35, ¶ 27.

Second, plaintiff's allegations concerning the prevalence of gang activity at ECI, if true, would not provide a basis for concluding that the individual defendants knew that plaintiff was at particular risk of an assault in the shower area. The allegations indicate that the gangs' attempt to assert control at ECI is not confined to the shower area, but instead extends to other "services and facilities" such as the prison telephones. ECF 35, ¶ 30. Indeed, according to plaintiff, guards and inmates refer to the *entire prison* as "Gangland." *Id.* ¶ 29. If true, the allegations would tend to establish that the risk posed by gang activity in the shower was no different from the risk of gang violence that exists generally at ECI.

Third, plaintiff's allegation that "a video camera [had been] installed to assist the officers and staff to better monitor the shower area," *id.* ¶ 27, would, if true, establish at most the "sheer possibility" that the individual defendants knew that plaintiff was at particular risk of assault in the shower area. *Iqbal*, 556 U.S. at 678. But, allegations that establish nothing more than a "sheer possibility" of wrongdoing fail to state a claim on which relief may be granted. *Id.*

Fourth, plaintiff's assertion that West, Barkley, and Bowman acquired the requisite knowledge because they previously "responded to the [shower] area as a result of serious assaults resulting in injuries," ECF 35, ¶ 27, is too conclusory to state a claim on which relief may be granted. The allegations provide no information about how or why the defendants' prior response

to the shower area resulted in knowledge that plaintiff was at particular risk of harm there. Nor would plaintiff's allegation about the defendants' response, if true, establish that the "risk was so obvious that it had to have been known." *Makdessi*, 789 F.3d at 136.

Fifth, plaintiff's allegation that the individual defendants' failure to monitor the shower area violated DPSCS policy, even if true, would be insufficient to establish that one or more of the individual defendants acted with deliberate indifference to the substantial risk that an inmate such as plaintiff would be assaulted in the shower area. As described by plaintiff, the DPSCS Conduct Standards "require *all* posts to be staffed . . . ." ECF 35, ¶ 23 (emphasis added). In other words, whatever duty to monitor may have been created by the DPSCS Conduct Standards was not specific to the shower area. Instead, it was applicable generally to "*all* posts" in the prison facility. *Id.* (emphasis added). Therefore, to the extent that such a duty may have made the individual defendants aware of any risk, the risk was, at most, the "general risk of violence" that exists throughout a prison facility. *King*, 76 F.4th at 266 n.7. And, in any event, the Fourth Circuit has recently reaffirmed that "knowingly violating a prison policy does not amount to deliberate indifference." *Id.* at 267 (citing *Rich*, 129 F.3d at 339–40).

Jordan also alleges that the individual defendants acted with deliberate indifference *after* the assault by failing to provide him with adequate medical care. *See* ECF 35, ¶ 34. In particular, plaintiff claims that he "has not received the proper medical attention, appointments, specialists, drops, eye patches and other medical devices as recommended by doctors." *Id.* And, plaintiff alleges that the individual defendants "have either personal or constructive of these incidents." *Id.* To that effect, plaintiff asserts "upon information and belief," that Green, Hill, West, Bowman, and Barkley are aware that he has not received adequate medical care because they "view[] and discuss[]" unidentified "documentation." *Id.* In addition, plaintiff alleges that certain "grievances"

he filed concerning the alleged denial of adequate medical care have been "relayed through Agency channels to . . . West, Hill, and Green." *Id.*

Plaintiff has not sued any healthcare providers.  And, he appears to have received some medical care.  Nevertheless, Jordan complains that medical directives were not followed or implemented, and that his need for further medical care has been ignored.  However, the allegations, if true, do not provide a basis on which to conclude that any individual defendant was aware of, but disregarded, plaintiff's need for further or particular medical care.

The Fourth Circuit's decision in *Langford v. Joyner*, 62 F.4th 122 (2023), is instructive.  In *Langford*, the plaintiff, a federal prisoner, filed suit pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  *Id.* at 124.[8]  He alleged that the warden, two prison nurses, a "case manager," and a "unit manager" acted with deliberate indifference to his medical needs by neglecting to treat his abdominal infection until eight days after the plaintiff first brought the condition to the defendants' attention.  *Id.* at 123–24.  The Fourth Circuit described the plaintiff's allegations as follows, *id.* at 125 (citations omitted) (first alteration added):

> [The plaintiff] alleges that he brought to the attention of "the Defendants," without specifying which ones, that his health was worsening.  Likewise, he says he was "refused treatment," but again does not say by which Defendant.  He alleges that he was "immobile in the showers" because of his deteriorating health, but does not

---

[8]As the Fourth Circuit recently recognized, "'[42 U.S.C.] § 1983 gives plaintiffs the statutory authority to sue *state* officials for money damages for constitutional violations . . . .'" *Fields v. Fed. Bureau of Prisons*, ___ F.4th ___, 2024 WL 3529034, at *2 (July 25, 2024) (citation omitted) (emphasis in *Fields*).  But, "'there is no statutory counterpart to sue federal officials.'" *Id.*  Therefore, if "they are to proceed at all, plaintiffs suing federal federal-officer defendants must proceed under an implied cause of action first established . . . in *Bivens* . . . ." *Id.*

As noted, Jordan has alleged deliberate indifference pursuant to § 1983, not *Bivens*.  Nevertheless, the right discussed in *Langford*—the Eighth Amendment right to be free of deliberate indifference to a known medical need—is the same right asserted by Jordan.  Therefore, the Fourth Circuit's comments in *Langford* about the insufficiency of that plaintiff's allegations apply as well to Jordan's allegations.

identify which, if any, of the Defendants was aware of this or even saw him in the showers.  He concludes by claiming "Defendants acted with culpable and deliberate indifference to [his] medical condition."

The Court determined that the plaintiff's "'generalized, conclusory, and collective allegations' fail[ed] to plausibly allege deliberate indifference on the part of each Defendant." *Id.* at 124–25.  According to the Court, the critical defect in plaintiff's "manner of pleading" was that the "complaint [made] only collective allegations against all 'Defendants,' without identifying how each individual Defendant personally interacted with [the plaintiff] or was responsible for the denial of his Eighth Amendment rights." *Id.* at 125.  Therefore, the Court said, "it is not reasonable to infer liability against each Defendant based on the facts alleged." *Id.* at 126.  The Court continued, *id.* (citations omitted):  "This is especially the case with the nonmedical Defendants (the warden, case manager, and unit manager), where [the plaintiff's] 'global manner of pleading' makes his claim against those Defendants 'less plausible because some of the individual defendants had no reason to have known or interacted with [the plaintiff] at the time of the alleged violations.'"

Like the allegations of the plaintiff in *Langford*, Jordan's allegations concerning the defendants' deliberate indifference to his medical needs are unacceptably "general[], conclusory, and collective." *Id.* at 125 (citation and internal quotation marks omitted).  In particular, plaintiff's generic allegation that the individual defendants "have either personal or constructive knowledge," ECF 35, ¶ 34, of his worsening medical condition is a "'naked assertion[]'" not entitled to be assumed true.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  And, plaintiff's unexplained allegations, "upon information and belief," concerning "documentation" and "Agency channels" do not constitute the "'further factual enhancement'" that distinguishes a

28

satisfactory non-conclusory allegation from an unviable "'naked assertion[]'" of wrongdoing. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

The plaintiff's generic allegations are especially deficient because Green, Hill, West, Barkley, and Bowman were "nonmedical" personnel whose job responsibilities provided "'no reason to have known or interacted with'" Jordan regarding his medical needs. *Langford*, 62 F.4th at 126 (citation omitted). As noted, Green is the former Secretary of DPSCS; Hill is the former Commissioner of the DPSCS Division of Corrections; West is the Warden of ECI; Bowman is a former DPSCS correctional officer; and Barkley is a DPSCS correctional officer. The allegations provide no basis on which to conclude that any defendant was generally responsible for the provision of medical care to inmates at ECI. Nor do they provide a basis on which to conclude that they were involved with the medical care provided to defendant in particular. Therefore, I conclude that plaintiff has failed to state a claim for denial of medical care against Green, Hill, West, Barkley or Bowman.

In sum, plaintiff has failed to allege that any of the individual defendants "subjectively 'knew' of [a] substantial risk of harm to [plaintiff] and 'consciously disregarded' it." *Ford*, 2024 WL 3260902, at *4 (quoting *Farmer*, 511 U.S. at 837). Therefore, plaintiff has not stated a claim for deliberate indifference against any of the individual defendants.

### 2. Qualified Immunity

In the alternative, defendants assert that Count 1 is subject to dismissal on grounds of qualified immunity. *See* ECF 39-2 at 19–21.

"Qualified immunity bars § 1983 actions against government officials in their individual capacities 'unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.'" *Barrett v. PAE Government*

*Servs., Inc.*, 975 F.3d 416, 428 (4th Cir. 2020) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018)) (cleaned up); *see Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021) (per curiam); *City of Tahlequah Okla. v. Bond*, 595 U.S. 9 (2021) (per curiam); *Taylor v. Riojas*, 598 U.S. 7, 7–10 (2020); *Reichle v. Howards*, 566 U.S. 658, 664 (2012).   A legion of Fourth Circuit rulings are to the same effect.  *See*, *e.g.*, *Atkinson v. Godfrey*, 100  F.4th 498, 504 (4th Cir. 2024); *Thurston v. Frye*, 99 F.4th 665, 673 (4th Cir. 2024); *Lewis v. Caraballo*, 98 F.4th 521, 530 (4th Cir. 2024); *Hulbert v. Pope*, 70 F. 4th 726, 732 (4th Cir. 2023); *Franklin v. City of Charlotte*, 64 F.4th 419, 530, 534–35 (4th Cir. 2023); *Hicks v. Ferreyra*, 64 F.4th 156, 169 (4th Cir. 2023); *Davison v. Rose*, 19 F.4th 626, 640 (4th Cir. 2021); *Halcomb v. Ravenell*, 992 F.3d 316, 319 (4th Cir. 2021); *Humbert v. Mayor and City Council of Balt.*, 866 F.3d 546, 555 (4th Cir. 2017), *cert. denied*, 584 U.S. 1013 (2018); *Osborne v. Georgiades*, 679 F. App'x 234, 237 (4th Cir. 2017); *Scinto*, 841 F.3d at 235; *Hunter v. Town of Mocksville*, 789 F.3d 389, 401 (4th Cir. 2015).

The doctrine of qualified immunity "balances two important interests: 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'"  *Atkinson*, 100 F.4th at 504 (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)); *Hicks*, 64 F.4th at 169; *Barrett*, 975 F.3d at 428–29; *Betton*, 942 F.3d at 190; *Wilson v. Prince George's Cnty.*, 893 F.3d 213, 219 (4th Cir. 2018); *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015).  An official who makes an honest but objectively unreasonable mistake is not protected by qualified immunity. Rather, the doctrine protects officials "'who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful.'" *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (citation omitted); *accord Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012).  In other words, the doctrine affords "government officials breathing room to make

reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam).

To determine whether qualified immunity applies, courts generally conduct a two-step inquiry. *King,* 76 F.4th at 265; *Hicks*, 64 F.4th at 169. First, courts ask whether the facts alleged, "[t]aken in the light most favorable to the party asserting the injury, . . . show the [official's] conduct violated a constitutional [or statutory] right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, courts ask whether the right at issue "'was clearly established in the specific context of the case—that is, [whether] it was clear to a reasonable [official] that the conduct in which he allegedly engaged was unlawful in the situation he confronted.'" *Merchant v. Bauer*, 677 F.3d 656, 662 (4th Cir. 2012), *cert. denied*, 568 U.S. 1068 (2012) (quoting *Figg v. Schroeder*, 312 F.3d 625, 635 (4th Cir. 2002)). "'Courts are no longer required to analyze these questions sequentially, but it is often the better approach' to 'determine first whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *E.W. ex rel. T.W. v. Dolgos*, 884 F.3d 172, 178 (4th Cir. 2018) (internal citation omitted).

"The plaintiff bears the burden of proof on the first question—i.e., whether a constitutional violation occurred . . . . [and] [t]he defendant bears the burden of proof on the second question—*i.e.*, entitlement to qualified immunity." *Henry v. Purnell*, 501 F.3d 374, 377–78 (4th Cir. 2007) (internal citations omitted); *see also Atkinson*, 100 F.4th at 504; *Thurston*, 99 F.4th at 673; *Stanton*, 25 F.4th at 233.

Qualified immunity is an affirmative defense. *Hicks*, 64 F.4th at 169; *Ridpath v. Bd. of Governors Marshall Univ.,* 447 F.3d 292, 305 (4th Cir. 2006). But, it does not merely provide a defense to liability. Rather, it provides "*immunity from* suit . . . ." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in *Mitchell*); *see Gilliam v. Sealey*, 932 F.3d 216, 229 (4th Cir. 2019),

*cert. denied,* 140 S.Ct. 2641 (2020)*; see also Ussery v. Mansfield*, 786 F.3d 332, 337 (4th Cir. 2015). Accordingly, the immunity is "'effectively lost if a case is erroneously permitted to go to trial.'" *Ussery*, 786 F.3d at 337 (quoting *Mitchell*, 472 U.S. at 526).

As indicated, if an official is shown to have violated the rights of a plaintiff, the court must "evaluate whether the right at issue was 'clearly established' at the time of the [official's] conduct." *Wilson*, 893 F.3d at 219. This is a question of law for the court to resolve. *Ray*, 948 F.3d at 228; *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992).

"The inquiry into whether a constitutional right is 'clearly established' requires defining the right at issue." *Hicks*, 64 F.4th at 170; *see Atkinson*, 100 F.4th at 505; *Pfaller v. Amonette*, 55 F.4th 436, 445 (4th Cir. 2022); *Halcomb*, 992 F.3d at 319–20. "The Supreme Court has cautioned against defining a right with 'a high level of generality'. . . ." *Hicks*, 64 F.4th at 170 (citing *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)); *see City of Escondido v. Emmons*, 586 U.S. 38 (2019); *White v. Pauly*, 580 U.S. 73, 79 (2017); *Younger*, 79 F.4th at 385. "Defining the right at a high level of generality 'avoids the crucial question whether the offic[er] acted reasonably in the particular circumstances that he or she faced.'" *Atkinson*, 100 F.4th at 505 (citation omitted) (alteration in *Atkinson*); *see Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014). Therefore, the court must define "the precise right" at issue, *Halcomb*, 992 F.3d at 319-20, and "define the right at issue with specificity." *Knibbs v. Momphard*, 30 F.4th 200, 223 (4th Cir. 2022); *see City of Francisco v. Sheehan*, 575 U.S. 600, 613 (2015) (same).[9]

---

[9] Defining the right at issue is not necessarily an easy task. In *Younger*, 79 F.4th 373, which involved the brutal beating of a prisoner by correctional officers, the district court defined the right at issue as a "prisoner's 'right to be protected from malicious attack . . . from the very officials tasked with ensuring their security.'" *Id.* at 386 n.20. But, the Fourth Circuit concluded that the district court's definition was too general. *Id.* According to the Fourth Circuit, the district court "failed to heed [the] requirement" of specificity. *Id.*

"'Clearly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand what he is doing is unlawful." *Wesby*, 583 U.S. at 63 (internal quotation marks omitted); *see Thurston*, 99 F.4th at 678 ("[A] right is only clearly established if it has a 'sufficiently clear foundation in then-existing precedent.'") (quoting *Wesby*, 583 U.S. at 63); *see also Atkinson*, 100 F.4th at 505; *King*, 76 F.4th at 265; *Adams v. Ferguson*, 884 F.3d 219, 226 (4th Cir. 2018). Put another way, the "clearly established" standard "requires that the contours of the legal rule be 'so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Garrett v. Clarke*, 74 F.4th 579, 584 (4th Cir. 2023) (quoting *City of Tahlequah*, 595 U.S. at 12 (internal quotation marks omitted)).

As the Fourth Circuit has explained, "existing precedent must have placed the statutory or constitutional question beyond debate." *Tarashuk v. Givens*, 53 F.4th 154, 162 (4th Cir. 2022) (internal quotation and citation omitted); *see Kisela*, 584 U.S. at 104; *King*, 76 F.4th at 265–66. "'Otherwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract facts.'" *Atkinson*, 100 F.4th at 506 (citation omitted). "In the end, the key inquiry is whether 'the law provided fair warning that [the officers'] conduct was unconstitutional.'" *Id.* (quoting *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538 (4th Cir. 2017)) (additional citation and internal quotation marks omitted) (alteration in *Atkinson*).

In assessing qualified immunity, a court in Maryland is guided by cases from the Supreme Court, the Fourth Circuit, and "the highest court of the state in which the action arose." *Thompson*, 878 F.3d at 98. In the absence of controlling authority, the court considers "whether the right was clearly established based on general constitutional principles or a consensus of persuasive authority." *Id.* (internal quotation marks omitted). And, "even when the facts in the record

establish that the [official's] conduct violated a plaintiff's constitutional rights, the [official] still is entitled to immunity from suit 'if a reasonable person in the [official's] position could have failed to appreciate that his conduct would violate those rights.'" *Wilson*, 893 F.3d at 219 (quoting *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991)); *see also Williams v. Strickland*, 917 F.3d 763, 768 (4th Cir. 2019); *Greene v. Feaster*, 733 F. App'x 80, 82 (4th Cir. 2018) (per curiam) ("Even when a prison official [is shown to have violated a constitutional right of a plaintiff], qualified immunity will shield him from liability as long as his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'") (quoting *Goines*, 822 F.3d at 170).

Notably, "[t]here is no requirement that the 'very action in question [have] previously been held unlawful' for a reasonable official to have notice that his conduct violated that right." *Scinto*, 841 F.3d at 236 (second alteration in original) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). Government officials "can still be on notice that their conduct violates established law even in novel factual circumstances, so long as the law provided fair warning that their conduct was wrongful." *Dean ex rel. Harkness v. McKinney*, 976 F.3d 407, 418 (4th Cir. 2020) (internal quotation marks omitted); *see also Hope*, 536 U.S. at 741 (concluding that cases involving "fundamentally" or "materially similar" facts are not necessary to a finding that the law is clearly established).

Indeed, the second inquiry "turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). If the law at the time of the alleged violation was not "clearly established," the official will be entitled to qualified immunity because "an official could not reasonably be expected

to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). On the other hand, "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Id.* at 818–19.

The Fourth Circuit has "effectively done away with the clearly established prong of qualified immunity for a subset of deliberate indifference cases," *Younger*, 79 F.4th at 385 n.17, namely, cases in which the alleged "Eighth Amendment violation[] inherently include[s] knowing disregard for the law." *Pfaller*, 55 F.4th at 446; *see King*, 76 F.4th at 265; *Thorpe v. Clarke*, 37 F.4th 926 (4th Cir. 2022). "So when a defendant knows her conduct does not pass constitutional muster," a court does "not look to see if she violated clearly established precedent." *King*, 76 F.4th at 265 (citation omitted). "Instead," the court "ask[s] only if her actions violated the Eighth Amendment." *Id.* (citation omitted). But, if a defendant "'need[s] case law to tell him'" that certain conduct is unlawful, he "is entitled to the same two-pronged, qualified-immunity approach as every other government official." *Id.* (citations omitted) (alteration added).

I determined, *supra*, that plaintiff has not "alleged a deprivation of a constitutional right at all." *Dolgos*, 884 F.3d at 178. In particular, I concluded that plaintiff did not sufficiently allege that the individual defendants acted with deliberate indifference to the known risk of inmate-on-inmate violence in the shower area. And, I concluded that plaintiff did not sufficiently allege that the individual defendants were deliberately indifferent to his serious medical needs. These conclusions are, by themselves, sufficient grounds on which to dismiss the claims asserted in Count 1.

However, even assuming that plaintiff has stated claims for failure to protect and denial of adequate medical care, in violation of the Eighth Amendment, the individual defendants would remain entitled to dismissal if the law governing their obligations under the Eighth Amendment was not clearly established at the time of the alleged wrongdoing. *See Garrett*, 74 F.4th at 584. Mindful that a lack of clearly established law could provide an alternative basis for the dismissal of plaintiff's claims, I turn to consider whether the law of (1) deliberate indifference to the risk of inmate-on-inmate violence and (2) deliberate indifference to an inmate's medical needs was clearly established at the time of the alleged violations.

I first consider whether the right allegedly violated by the individual defendants' failure to prevent the assault on defendant in the shower area was clearly established in January of 2019. I begin my inquiry by "defin[ing] the right at issue with specificity." *Knibbs*, 30 F.4th at 223. The right at issue here is an inmate's right to receive uninterrupted supervision by a correctional officer when the inmate is using the shower facility, an area of the prison that, according to the allegations, poses a known risk of inmate-on-inmate violence. Even assuming that the Eighth Amendment provides such a right, I conclude that the right, so defined, was not clearly established in January of 2019.

As an initial matter, this is not a case in which "context makes the [alleged] violation [so] 'obvious'" that "case law is . . . not needed to establish [the defendant's] awareness" that his conduct was constitutionally proscribed. *King*, 76 F.4th at 265 (citation omitted). This conclusion follows from the Fourth Circuit's decision in *King*, 76 F.4th 259. There, "the substantial risk of harm [the defendant was] alleged to have known about" was the risk of "inmate-on-inmate violence." *Id.* at 265. According to the plaintiff, the defendant's conduct was "constitutionally deficient because although he took steps to mitigate that risk—for example, performing security

checks every thirty minutes—he did not look in the cells on those checks." *Id.* However, the Court determined that, because "the Constitution does not obviously require [an officer to] look in the cells to mitigate the risk of inmate-on-inmate violence," the defendant was "entitled to the two-prong approach." *Id.* (cleaned up).

The Constitution "does not obviously require" correctional officers to provide uninterrupted supervision of inmates during the inmates' use of prison facilities that pose a risk of inmate-on-inmate violence. *Id.* Therefore, even assuming, *arguendo*, that plaintiff has sufficiently alleged that one or more of the individual defendants violated plaintiff's right to receive such supervision, it is not the case that their assumed "violation[] inherently include[s] knowing disregard for the law." *Pfaller*, 55 F.4th at 446. It follows that the question of whether the right allegedly violated was clearly established remains separate from the question of whether the right was violated at all. Therefore, I turn to assess whether the right allegedly violated by one or more of the individual defendants, as it has been defined above, was clearly established in January of 2019.

I readily conclude that it was not. The Fourth Circuit's decision in *King*, 76 F.4th 259, is instructive. The plaintiff in *King* was the estate of one of four inmates murdered by two other inmates during an incident that lasted over a two-and-half-hour period. *Id.* at 263. The murders occurred in a housing unit for "'inmates with persistent mental illness . . . .'" *Id.* The two assailants were "serving life sentences for double murders" and had "a violent prison history." *Id.* They "lured [the plaintiff][ 10] into [an] unlocked cell, strangled him with an extension cord,[] and stuffed his body underneath the bed." *Id.* The murders of the three other victims followed. *Id.* Their bodies, too, were concealed in the unlocked cell. *Id.*

---

[10] To promote ease of reading, I shall refer to the victim as the "plaintiff."

The correctional officer on duty while the murders were occurring was required by prison policy "to conduct security checks every 30 minutes." *Id.* He "had also been trained to look inside the cells when conducting th[e] security checks." *Id.* While the murders were being committed, the officer conducted security checks at the required interval. *Id.* But, he did not look inside the cell where the murders occurred. *Id.* The plaintiff sued the officer under 42 U.S.C. § 1983, alleging, *inter alia*, that he was deliberately indifferent to the plaintiff's safety, in violation of the Eighth Amendment. *Id.*

The Fourth Circuit determined that the officer was entitled to qualified immunity with respect to the plaintiff's claim of deliberate indifference. *See id.* at 268. The Court defined the right at issue as the plaintiff's "right to have a correctional officer look into the cell window while conducting a security check—given a known and substantial risk of inmate-on-inmate violence in the" area where the defendant was housed. *Id.* at 266. And, the Court concluded that this right was not clearly established at the time of the murders in April 2017. *See id.* at 263, 268.

In explaining its conclusion, the Court first addressed the significance of the Supreme Court's decision in *Farmer*, 511 U.S. 825. In *Farmer*, the plaintiff was a "transsexual" who, although "biologically male," "[f]or several years before being convicted . . . wore women's clothing . . . underwent estrogen therapy, received silicone breast implants, and submitted to unsuccessful 'black market' testicle-removal surgery." *Id.* at 829 (citing *Farmer v. Haas*, 990 F.2d 319, 320 (7th Cir. 1993)). In prison, Farmer "continued hormonal treatment while incarcerated using drugs smuggled into prison," and wore "clothing in a feminine manner, as by displaying a shirt 'off one shoulder.'" *Farmer*, 511 U.S. at 829 (quoting joint appendix). He was "housed . . . in several federal facilities, sometimes in the general male population but more often in segregation," at least on one occasion "because of safety concerns." *Id.* at 829–30.

38

In 1989, Farmer "was transferred for disciplinary reasons from the Federal Correctional Institute in Oxford, Wisconsin . . . to the United States Penitentiary in Terre Haute, Indiana . . . ." *Id.* at 830. After the transfer, he was initially placed "in administrative segregation." *Id.* However, Farmer was later placed in the general prison population. *Id.* "Within two weeks," he had been "beaten and raped by another inmate in [his] cell." *Id.* Farmer sued the prison officials, alleging deliberate indifference in violation of the Eighth Amendment. *Id.* at 831.

The district court granted summary judgment in favor of the defendants, and the Seventh Circuit affirmed. *Id.* at 831–32. The Supreme Court granted certiorari to resolve a split among the Courts of Appeals, which "'had adopted inconsistent tests for deliberate indifference.'" *Id.* at 832. The Court announced the deliberate indifference standard that now governs failure-to-protect claims under the Eighth Amendment. *See id.* (holding "that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety . . . ."). But, the Court did not decide whether, according to the standard it had announced, the summary judgment record supported the plaintiff's claim of deliberate indifference. *Id.* at 848. Instead, the Court remanded the case "for application of the Eighth Amendment principles" it had set forth. *Id.* at 849.

In *King*, 76 F.4th 259, the plaintiff argued that the "general principle" established by *Farmer*—that a prisoner has a right "to be free from an official's deliberate indifference to a substantial risk of serious harm"—"manifestly includes the right to have a prison official look in his cell during security checks." *Id.* at 267. The Fourth Circuit disagreed. *Id.* According to the Court, "*Farmer* provides general guidance about Eighth Amendment deliberate-indifference claims." *Id.* But, the Court reasoned that "*Farmer* provides no guidance about how the Eighth Amendment applies to th[e] . . . 'specific context'" of the plaintiff's claim. *Id.* (quoting *Mullenix*

*v. Luna*, 577 U.S. 7, 12 (2015)).  In particular, the Court said, "*Farmer* does not make it apparent

that" that the officer who failed to intervene in plaintiff's murder "violated the Eighth Amendment

by failing to look into each cell during his security checks."  *King*, 76 F.4th at 267.  Therefore, the

Court concluded that "*Farmer* . . . fails to clearly establish th[e] 'right'" asserted by the plaintiff.

*Id.*

       The *King* Court also considered the significance of its decision in *Makdessi*, 789 F.3d 126.

*See King*, 76 F.4th at 267 n.9.  *In Makdessi*, the plaintiff, Makdessi, was "a short, middle-aged

prisoner with physical and mental problems that ma[d]e him 'vulnerable to harassment and other

attacks by other inmates.'"  *Id.* at 134 (quoting joint appendix).  "For years," Makdessi had

"complained to prison officials, including in the form of numerous written letters and grievances,

about physical and sexual abuse he suffered in prison."  *Id.* at 135.  But, "[d]espite Makdessi's

stature, vulnerability, and repeated complaints," he "was placed in a cell with an aggressive prison

gang member," *id.*, who repeatedly sexually assaulted him.  *See id.* at 130.  Makdessi filed "suit

against various prison officials, alleging violations of his Eighth Amendment right to be free from

cruel and unusual punishment."  *Id.* at 131.  After a trial before a magistrate judge, the district

court entered judgment in the defendants' favor.  *Id.*

       The Fourth Circuit vacated the judgment.  *Id.* at 136.  It explained that the district court

"failed to appreciate that the subjective 'actual knowledge' standard required to find deliberate

indifference may be proven by circumstantial evidence that a risk was so obvious that it had to

have been known."  *Id.*  Moreover, according to the Court, the district court "focused on factors

that, under *Farmer*, may be irrelevant," such as "whether a prisoner protests or complains before

he is injured."  *Id.*  However, the Court determined that "[w]hether Makdessi succeeds with his

claims remains an open question." *Id.*  Therefore, the Court remanded the case to the district court for reconsideration according to the correct standard. *Id.*

Characterizing its holding in *Makdessi*, the *King* Court stated, 76 F.4th at 267 n.9: "In *Makdessi*, we held that prison officials were deliberately indifferent because the risk of harm was so obvious that the officials must have known about it." (Citing *Makdessi*, 789 F.3d at 134–35). And, the Court asserted that, "considering the differences between *Makdessi* and this case, [the fact] that the risk [may have been] obvious in *Makdessi* says little about whether it was obvious here." *King*, 76 F.4th at 267 n.9.  Therefore, the Court determined that *Makdessi* did not clearly establish an inmate's right to have a prison official look in his cell during security checks.  And, without addressing any other potential sources of the right asserted, the Court concluded that the officer's failure to "look[] into cells rather than walking around" did not "violate[] [the plaintiff's] clearly established rights." *Id.* at 268.  On that basis, the Court granted qualified immunity to the officer with respect to the plaintiff's claim of deliberate indifference.

In my view, the Court's decision in *King* compels a grant of qualified immunity to the individual defendants with respect to Jordan's claim that they acted with deliberate indifference to the risk of inmate-on-inmate violence in the shower area.  I have defined the right at issue as an inmate's right while using the shower facility to receive uninterrupted supervision because, as alleged, there is a known risk of inmate-on-inmate violence in the shower area.  The right at issue here, so defined, is comparable to the right at issue in *King*.  Because the Court in *King* decided that the right asserted by the plaintiff in that case was not clearly established, I conclude that the substantially identical right asserted by Jordan was not clearly established.[11]  For that reason, the

---

[11] I am aware of no authority decided between April of 2017—when the murders at issue in *King* occurred—and January of 2019—when Jordan was assaulted—that clearly established the right at issue in this case, as I have defined it.

individual defendants are entitled to qualified immunity with respect to Jordan's claim of deliberate indifference to the known risk of inmate-on-inmate violence in the shower area.

In contrast, the law governing a prison official's obligation to respond adequately to a plaintiff's known medical needs was clearly established at the time of the alleged violation. In *Scinto*, 841 F.3d at 236, decided in 2016, the Fourth Circuit held that "the right of prisoners to receive adequate medical care and to be free from officials' deliberate indifference to their known medical needs . . . has been clearly established by the Supreme Court and this Circuit since at least 1976 . . . ."

To be sure, I have concluded that plaintiff has not alleged any violation of this right. And, as noted, this conclusion alone is sufficient grounds on which to dismiss plaintiff's claim of deliberate indifference to a known medical need. Nevertheless, I cannot agree with the defendants that the lack of clearly established law governing a prisoner's right to receive adequate medical care provides an alternative basis for dismissal of plaintiff's claim of deliberate indifference to a known medical need.

In sum, Count 1 is subject to dismissal in its entirety. Plaintiff has not sufficiently alleged that one or more of the individual defendants acted with deliberate indifference to a known risk of inmate-on-inmate violence in the shower area. Nor has plaintiff alleged that the individual defendants acted with deliberate indifference to plaintiff's known medical needs. And, even assuming, *arguendo*, that plaintiff sufficiently alleged deliberate indifference to a known risk of inmate-on-inmate violence in the shower area, at the time of the assault in January of 2019, the law did not clearly establish that defendants were obligated to provide uninterrupted supervision of the area.

Plaintiff has amended his pleading three times.  *See* ECF 12; ECF 27; ECF 35.  Having afforded him ample opportunity to cure the deficiencies in his allegations of deliberate indifference, I shall dismiss Count 1, with prejudice.

### B.  Count 2 (Supervisory Liability)

In Count 2 of the Third Amended Complaint, plaintiff asserts, pursuant to 42 U.S.C. § 1983, that Green, Hill, West, and Barkley are subject to "supervisory liability" for failing "to develop, carry out and enforce reasonable and effective DPSCS policies . . . to protect Plaintiff from attack, despite their awareness of the excessive risk of harm to Plaintiff and other inmates as a result of the hazardous and dangerous shower conditions."  *Id.* ¶ 53; s*ee id.* ¶¶ 47–57.

Although "supervisory liability is a well-established concept in . . . § 1983 jurisprudence, the term is a misnomer."  *Younger*, 79 F.4th at 381 n.12 (citations omitted).  This is because "'each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  *King*, 76 F.4th at 269 (quoting *Iqbal*, 556 U.S. at 677).  Therefore, "'[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.'"  *King*, 76 F.4th at 269 (quoting *Iqbal*, 556 U.S. at 676).

Nevertheless, "'supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates.'"  *Robinette*, 105 F.4th at 123 (quoting *Shaw*, 13 F.3d at 798).  This supervisory liability "is not based on ordinary principles of *respondeat superior*, but rather . . . on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"  *Baynard*, 268 F.3d at 235 (4th Cir. 2001) (quoting *Slakan*, 737 F.2d at 372).

To state a claim for supervisory liability—which, at bottom, is just a species of personal liability—a plaintiff must allege facts, that, if proven, show (1) that "the supervisor had actual or constructive knowledge that h[er] subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff . . . (2) that the supervisor's response to that knowledge was so inadequate . . . as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices' . . . and (3) that there was 'an affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Wilkins*, 751 F.3d at 226 (quoting *Shaw*, 13 F.3d at 799) (alteration in *Wilkins*).[12]

I concluded earlier that plaintiff has not adequately alleged that any of the individual defendants acted with deliberate indifference to a known risk of inmate-on-inmate violence in the shower area.  Nor has plaintiff alleged that any of the individual defendants acted with deliberate indifference to plaintiff's known medical needs.  Therefore, plaintiff has failed to allege a necessary predicate of supervisory liability: namely, that a "subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff." *Wilkins*, 751 F.3 at 226 (citation and internal quotation marks omitted).  A supervisor cannot be liable for the harm caused by a subordinate's unconstitutional conduct if no such unconstitutional conduct has occurred.  It follows that plaintiff has failed to allege that any of the individual defendants are liable as supervisors.

However, I also concluded above that the individual defendants are entitled to qualified immunity with respect to plaintiff's claim of deliberate indifference to a known risk of inmate-on-inmate violence in the shower area.  In particular, I determined that the right allegedly violated—

---

[12] In *Younger*, the Court stated that it need not decide "whether or how much of the three-factor test from *Shaw* conflicts with *Iqbal* . . . ."  79 F.4th at 384 n.16.

an inmate's right while using the shower facility to receive uninterrupted supervision because of a known risk of inmate-on-inmate violence in the shower area—was not clearly established at the time of the assault.  Insofar as plaintiff's claim of supervisory liability is predicated on an alleged violation of this right, the claim is subject to dismissal on the additional ground of qualified immunity.

In sum, I shall dismiss Count 2 in its entirety, with prejudice.

### C.  State Law Claims

The claims asserted in Counts 3, 4, 5, 6, and 7 of the Third Amended Complaint arise under Maryland law.  In Count 3, plaintiff asserts that the defendants violated the Maryland Declaration of Rights, "including but not limited to Articles 2, 19, 24, and 26." ECF 35, ¶ 60.  In Count 4, plaintiff alleges that the "Defendants' actions and omissions deprived Mr. Jordan of his rights under the Maryland Declaration of Rights, Articles 16 and 25, to be free from cruel and unusual punishment."  *Id.* ¶ 68.  And, in Counts 5, 6, and 7, plaintiff asserts three claims arising under the Maryland common law:  "Vicarious Liability," against all defendants (Count 5), *id.* ¶¶ 75–82; negligence, against all defendants (Count 6), *id.* ¶¶ 83–88; and gross negligence, against Green, Hill, West, Bowman, and Barkley (Count 7).  *Id.* ¶¶ 89–91.

Jurisdiction over these State law claims is governed by the doctrine of supplemental jurisdiction, pursuant to 28 U.S.C. § 1367.  Section 1367(a) provides, in part, that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  However, pursuant to 28 U.S.C. § 1367(c)(3), a district court

45

"may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."

The Fourth Circuit has recognized that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995); *see ESAB Group, Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 394 (4th Cir. 2012) ("Section 1367(c) recognizes courts' authority to decline to exercise supplemental jurisdiction in limited circumstances, including . . . where the court dismisses the claims over which it has original jurisdiction."); *Hinson v. Norwest Fin. S. Carolina, Inc.*, 239 F.3d 611, 616 (4th Cir. 2001) (stating that, "under the authority of 28 U.S.C. § 1367(c), authorizing a federal court to decline to exercise supplemental jurisdiction, a district court has inherent power to dismiss the case or, in cases removed from State court, to remand, provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met"). Nevertheless, the Supreme Court has instructed federal courts to "consider and weigh . . . the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over . . . pendent state-law claims." *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

A court that has declined to exercise supplemental jurisdiction over state law claims may dismiss the case or, if the case is a removed action, remand it to state court. *See id.* at 353–57. In particular, "[i]n *Carnegie–Mellon*, the [Supreme] Court found federal courts to have an inherent power to remand removed State claims when the federal claims drop out of the case." *Hinson*, 239 F.3d at 616 (emphasis in original). And, "[e]ven though *Carnegie–Mellon* was decided before the doctrine of pendent jurisdiction was codified in 28 U.S.C. § 1367," the Fourth Circuit has said that it "continues to inform the proper interpretation of § 1367(c)." *Hinson*, 239 F.3d at 616.

The only claims over which this Court has original jurisdiction are those asserted in Counts 1 and 2 of the Third Amended Complaint. These claims are asserted pursuant to 42 U.S.C. § 1983 and the Eighth Amendment to the Constitution. *See* ECF 35 at 18, 21. The Court has original jurisdiction of these claims under 28 U.S.C. § 1331, which provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

I have concluded that Counts 1 and 2 are subject to dismissal. Therefore, the only claims over which this Court has original jurisdiction have been "extinguished." *Shanaghan*, 58 F.3d at 110. As a result, I must decide whether to exercise supplemental jurisdiction over the state law claims asserted in Counts 3, 4, 5, 6, and 7.

As noted, plaintiff originally filed suit on March 22, 2022, in the Circuit Court for Baltimore City. *See* ECF 2. The case was removed to federal court on June 22, 2022, pursuant to 28 U.S.C. §§ 1331, 1343, and 1441(a). ECF 1, ¶ 5.

In my view, a remand to the Circuit Court for Baltimore City is the appropriate disposition. As a defense to plaintiff's state law claims, defendants have asserted immunity pursuant to the Maryland Tort Claims Act ("MTCA"). The MTCA offers "a limited waiver of sovereign immunity and 'is the sole means by which the State of Maryland and its personnel may be sued in tort.[]'" *Paulone v. City of Frederick*, 718 F. Supp. 2d 626, 637 (D. Md. 2010) (citation omitted); *see Condon v. Md.-Univ. of Md.*, 332 Md. 481, 492, 632 A.2d 753, 758 (1993); *Mitchell v. Hous. Auth. of Balt. City*, 200 Md. App. 176, 201–02, 26 A.3d 1012, 1027–28 (2011).[13]

---

[13] Plaintiff's State law claims arise under the Maryland Declaration of Rights as well as the common law. And, "the MTCA applies to State constitutional torts" as well as to State common law torts. *Williams v. Morgan State Univ.*, 484 Md. 534, 550, 300 A.3d 54, 63 (2023) (citing *Lee v. Cline*, 384 Md. 245, 266, 863 A.2d 297, 310 (2004)).

Principles of comity favor remand; the State courts are well equipped to apply and interpret the law governing the immunity of the State and its employees.  *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.[]").  Indeed, the Supreme Court has said that, "if . . . federal claims are dismissed before trial . . . the state claims should be dismissed as well.[]"  *Id.*

Remand is also consistent with the Court's interest in judicial economy and fairness.  The suit has not yet been answered and discovery has not begun.  Under these circumstances, remand would not unduly interrupt the progress of the litigation or reverse the progress that was already made.

## V.      Conclusion

For the foregoing reasons, I shall grant the Motion (ECF 39; ECF 42), in part. In particular, I shall dismiss, with prejudice, Counts 1 and 2 of the Third Amended Complaint.  And, I shall remand the remaining claims, all of which arise under Maryland law, to the Circuit Court for Baltimore City.

An Order follows, consistent with this Memorandum Opinion.


Date:   July 31, 2024                                      _____/s/_____

                                                          Ellen Lipton Hollander
                                                          United States District Judge

48